

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-28-2006

# Celaj v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4301

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Celaj v. Atty Gen USA" (2006). *2006 Decisions.* Paper 14.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/14

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-4301

———

GJERGJ CELAJ; ALMA CELAJ,
                                    Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                    Respondent

———

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA Nos. A96-258-150 & A96-258-151)
Honorable Esmeralda Cabrera, Immigration Judge

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 12, 2006

Before: FUENTES and VAN ANTWERPEN, Circuit Judges, and PADOVA,*
District Judge.

(Filed December 28, 2006)

———

OPINION OF THE COURT

———

_____
*The Honorable John R. Padova, District Judge of the Eastern District of Pennsylvania,
sitting by designation.

VAN ANTWERPEN, *Circuit Judge*.

Petitioners Gjergj and Alma Celaj, natives and citizens of Albania and members of

that country's Democratic Party, seek review of the August 22, 2005, Order of the Board

of Immigration Appeals ("BIA"), which affirmed the April 8, 2004, Order of the

Immigration Judge ("IJ"). The IJ denied the Celajs' claims for asylum, withholding of

removal, and relief under the United Nations Convention Against Torture ("Convention

Against Torture"). We have jurisdiction to review the petition pursuant to 8 U.S.C. §

1252(a)(1), and for the reasons set forth below, we will deny the petition.

## I.

Because we write solely for the benefit of the parties, we will set forth only those

facts necessary to our analysis.

The Celajs entered the United States at Detroit, Michigan on June 13, 2002. They

filed an application for asylum, withholding of removal, and relief under the Convention

Against Torture on February 8, 2003. On April 7, 2003, the former Immigration and

Naturalization Service[1] ("INS") served them with a Notice to Appear, charging them with

being subject to removal under 8 U.S.C. § 1227(a)(1)(A).

Gjergj Celaj submitted a statement in support of his application and provided

---

[1]On March 1, 2003, the INS ceased to exist and its functions were transferred to the newly formed Bureau of Immigration and Customs Enforcement, within the United States Department of Homeland Security. *See Knapik v. Ashcroft,* 384 F.3d 84, 86 n.2 (3d Cir. 2004) (citing Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 452, 471, 116 Stat. 2135).

testimony at a merits hearing before the IJ on April 22, 2003.[2]  At the hearing, Celaj conceded removability but sought asylum, withholding of removal, and relief under the Convention Against Torture.  His claim for relief is based primarily on a series of threats, detailed below, that he believes are directly linked to his support of Albania's Democratic Party.

Celaj testified that he participated in anti-Communist demonstrations in 1990 supporting Albania's newly formed Democratic Party.  He also testified that a friend, who had been arrested and questioned by police because of his participation in anti-communist demonstrations, warned Celaj that he was being targeted by communist supporters. Fearing for his life, on January 3, 1991, Celaj moved to Belgrade, Yugoslavia, where he sought political asylum from the United States Embassy, but was denied because the Democratic Party had come into power in Albania following the 1992 elections.  Celaj returned to Albania on July 8, 1993.  He testified that he joined the Democratic Party on August 15, 1993[3] and began working for the Party as a secretary.

On October 3, 1993, Celaj became a police officer.  He testified that his ability to perform his job was severely hampered in 1997 when the Socialist Party regained power in Albania and began releasing many of the individuals he arrested.  Specifically, Celaj

---

[2]Gjergj and Alma Celaj were married on October 16, 1998.  Alma Celaj's claim for relief is derivative of her husband's claim.  For the sake of simplicity, we refer only to Gjergj Celaj's claim.

[3]Alma Celaj provided evidence that she became a member of the Democratic Party on March 20, 1999.

testified that on August 10, 1999, he arrested five men for attempted robbery, but that these men were released later that night. He stated that his house was robbed and ransacked the following night, and threatening words were written on the walls. Celaj testified that he did not know who had robbed his house, but he believed it to be the individuals he had arrested the previous night. When Celaj reported this incident to the police chief, he was told to lay low or he would be killed.

Celaj testified that on September 16, 1999, he was fired from the police department and was replaced with police officers loyal to the Socialist Party. He asserted that he began to work for the Democratic Party as a bodyguard and as a poll watcher during the elections. Celaj testified that between 2000 and 2001, he received numerous threatening telephone calls on his home and cellular telephones in which the caller demanded that he stop participating in Democratic Party activities. In addition, Celaj testified that in May 2001, an unknown individual who identified himself as a member of the Albanian secret service approached him as he was leaving a Democratic Party meeting and threatened to kill him if he continued to participate in the elections. Moreover, Celaj testified that while he was watching the polls during the October 2000 and June 2001 elections, men entered the polling stations and threatened to kill anyone who voted for the Democratic Party. Celaj testified that he reported these threats to the police, but nothing was done.

Shortly thereafter, Celaj and his wife went into hiding in the village of Kelmend. While in hiding, he learned that the chief of the criminal section of the police department, to whom he had reported the threats on his life, had been shot and wounded. The Celajs

4

left Albania for the United States on June 11, 2002.  They learned through a telephone call with a family member that their house had been robbed again at the end of 2003.

In an oral decision dated March 9, 2004, the IJ concluded Celaj had failed to meet his burden of proof and denied relief on all grounds.  As to the asylum and withholding of removal claims, the IJ found Celaj's evidence to be based on pure conjecture and speculation rather than objective facts.  Specifically, the IJ found it significant that Celaj could not establish the identity of the anonymous callers or their motivation in making the threats.  The IJ also denied relief under the Convention Against Torture because Celaj failed to show it was more likely than not that he would be tortured if removed to Albania, and he presented no evidence that any of the threats were made at the instigation of or with the consent or acquiescence of any public official or other person acting in official capacity within Albania.

Celaj appealed to the BIA, which issued an opinion adopting and affirming the IJ's decision.  Agreeing with the IJ that Celaj failed to meet his burden of proof, the BIA found Celaj could not identify the individuals who had threatened him or establish that the threats were made on account of a protected ground under the Immigration and Nationality Act.  Regarding the robbery of his home, the BIA again noted Celaj could not identify the perpetrators or their motives.  Finally, the BIA observed that Celaj lived in Albania without incident for more than a year before fleeing to the United States.

## II.

The BIA issued an opinion in which it expressly adopted the findings of the IJ and

5

discussed some of the bases of the IJ's decision. Therefore, we will review the decisions of both the IJ and the BIA. *Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004). We review agency findings of fact under the substantial evidence standard. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). Under this standard, we look to whether the decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)) (internal quotations omitted). An agency's factual findings will be upheld "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Abdille v. Ashcroft*, 242 F.3d 477, 483-84 (3d Cir. 2001).

## III.

*A. Asylum*

Celaj contends he has met his burden to establish a claim for asylum based on past persecution and a well-founded fear of future persecution. Celaj points to his credible testimony[4] detailing his involvement with the Democratic Party, coupled with evidence of the threats on his life, his discharge from the police department, and the two robberies of his home. Celaj also cites the 2002 State Department Country Report on Human Rights

---

[4]Neither the IJ or BIA made a finding as to the credibility of Celaj's testimony. Therefore, we proceed as if Celaj's testimony were credible and review the decisions of the IJ and BIA for substantial evidence in light of his assumed credibility. Because we find those decisions are supported by substantial evidence, the absence of a credibility finding is not significant to the disposition of the case. *Kayembe v. Ashcroft*, 334 F.3d 231, 235 (3d. Cir. 2003).

Practices in Albania as supporting evidence to corroborate his claim. The government argues the connection between the events described by Celaj and his involvement with the Democratic Party is tenuous and unsupported by objective evidence. Furthermore, the government characterizes the conduct at issue as "unpleasant harassment" that does not rise to the level of persecution. Respondent's Brief at 24.

The Attorney General, in his discretion, may grant asylum to an alien who is a "refugee" as defined by the Immigration and Nationality Act. 8 U.S.C. § 1158(b)(1). A refugee is an alien who is unable or unwilling to return to his or her native country "because of persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

*1. Past Persecution*

A showing of past persecution gives rise to a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). In order to establish eligibility for asylum on the basis of past persecution, an applicant must show: "(1) an incident, or incidents, that rise to the level of persecution; (2) that is 'on account of' one of the statutorily-protected grounds; and (3) committed by the government or forces the government is either 'unable or unwilling' to control." *Gao*, 299 F.3d at 272 (quoting *Navas v. INS*, 217 F.3d 646, 655 (9th Cir. 2000)).

*a. "On account of" a statutorily protected ground*

In *INS v. Elias-Zacarias*, the Supreme Court held that an asylum applicant is not

7

required to provide "direct proof of his persecutors' motives" in order to make out a claim of past persecution. 502 U.S. 478, 483 (1992). However, because "the statute makes motive critical, he must provide *some* evidence of it, direct or circumstantial." *Id.* (emphasis in original). Furthermore, to reverse the BIA's finding, "he must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Id.* at 483-84.

In his brief to this Court, Celaj cites three instances of past persecution that he claims are on account of his political opinion: numerous threats on his life, discharge from the police department, and two robberies of his home. The BIA and IJ agreed that the connection between these incidents and Celaj's political activities was tenuous, largely based on speculation and conjecture. We find Celaj presented some circumstantial evidence connecting these acts to his political opinion. As to the discharge and robberies, we find the evidence does not compel a finding contrary to that of the BIA and IJ. However, as to the anonymous threats, we find the evidence compels the conclusion that they were made on account of Celaj's political opinion.

The BIA emphasized that Celaj could not identify the perpetrators of the robberies or provide evidence of their motivation. Celaj testified before the IJ that he did not know who robbed his house in August 1999, but that he thought it was five members of the Socialist Party whom he had arrested and were released the previous night. In addition, in his written application, Celaj stated the perpetrators wrote on his walls the statement, "Stop what you are doing or you will end up dead!" J.A. 172. The close proximity of the

8

robbery to the arrest and release of Socialist Party members, and the nature of the written threat viewed against the backdrop of Celaj's involvement with the Democratic Party is circumstantial evidence that *could have* supported an inference that the robbery was on account of Celaj's political opinion. However, the evidence does not *compel* this conclusion. *See Abdille v. Ashcroft*, 242 F.3d 477, 495 (3d Cir. 2001) (finding tenuous evidence insufficient to *compel* a finding that attacks were perpetrated on account of race, nationality, or membership in a particular social group) (emphasis added). Significantly, Celaj admitted he did not know who committed the 1999 robbery. Furthermore, the written statement is ambiguous and does not directly refer to Celaj's involvement with the Democratic Party. Moreover, Celaj presented no evidence that the 2003 robbery, which took place after Celaj left Albania, was on account of his political opinion.

Celaj also testified that he was fired from the police department in September 1999, one month after the robbery of his home. Celaj admitted the police chief did not tell Celaj why he had been fired, but testified that he believed he was fired because he complained that individuals he had arrested were being released. He also claims he and other police officers who supported the Democratic Party were replaced by officers loyal to the Socialist Party. This evidence is based almost entirely on speculation and any connection between the discharge and Celaj's political opinion is far too attenuated to compel reversal of the BIA and IJ's decisions.

Finally, the IJ reasoned that Celaj did not meet his burden because he could not identify the perpetrators of the anonymous threats or provide evidence of their

motivation. We find the evidence does *compel* a finding that the anonymous threats were made on account of Celaj's political opinion. Celaj testified that he received numerous anonymous threatening phone calls between 2000 and 2001. Moreover, he testified that the callers said the following: "Don't get involved in the elections. Don't be a body guard to members of parliament. We're going to execute you or shoot you." J.A. at 95. Furthermore, Celaj testified that a man who identified himself as a member of the Albanian secret service threatened Celaj on the street as he was leaving a Democratic Party gathering, warning him to "remove [him]self from meetings and gatherings." J.A. at 97. These threats were not only made at a time when Celaj was active in the Democratic Party, but directly referenced his activities with the Party. This evidence is sufficient to compel a finding that the threats were on account of his political opinion.

### b. Rises to the level of persecution

In addition to being "on account of" an enumerated ground, an asylum applicant must also show that the alleged conduct rose to the level of persecution. We define persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. INS,* 12 F.3d 1233, 1240 (3d Cir. 1993). "[P]ersecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Id.*

In *Li v. Attorney General*, we agreed with the Seventh and Ninth Circuits that "[t]hreats standing alone . . . constitute persecution in only a small category of cases." 400 F.3d 157, 164 (3d Cir. 2006) (quoting *Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 2000))

10

(internal quotations omitted). We held that "unfulfilled threats must be of a highly imminent and menacing nature in order to constitute persecution," and concluded that the threats of physical mistreatment, detention, and sterilization alleged in *Li* were insufficient to meet this threshold. *Id.* at 164-65 (citing *Boykov v. INS*, 109 F.3d 413, 416-17 (7th Cir. 1997)).

The anonymous threats of death and physical harm that Celaj received are similarly insufficient to rise to the level of past persecution. As in *Boykov*, *Lim*, and *Li*, neither Celaj nor any of Celaj's family members were actually physically harmed. *Id.* Furthermore, as the BIA noted, the Celajs lived in Albania for more than a year after receiving the initial threats in 2000 before fleeing to the United States. Accordingly, evidence of the anonymous threats, standing alone, does not compel a finding of past persecution.

We conclude that Celaj did not carry his burden of proving that his discharge from the police department or the robberies of his home were on account of his political opinion. Furthermore, while we find the anonymous threats were made on account of Celaj's political opinion, these unfulfilled threats were not sufficiently imminent or menacing to rise to the level of persecution. Accordingly, the conclusion that Celaj did not suffer past persecution is supported by substantial evidence.

*2. A well-founded fear of future persecution*

Celaj points to his membership in the Democratic party, the numerous threats he received, and the 2002 State Department Country Report as objective evidence of a well-

11

founded fear of persecution. He also argues that the fact that he and his wife went into hiding, and ultimately fled to the United States, demonstrates a subjectively genuine fear of future persecution. The government claims Celaj did not have a subjective fear of persecution because neither he nor his wife had been personally harmed by the violence in Albania. The government also argues Celaj presented no objective evidence that conditions in Albania have worsened and note that the Celajs were able to live in a different part of the country for a year without incident.

To establish a well-founded fear of future persecution, an asylum applicant must meet both a subjective and an objective component. Specifically, he must show that he has a genuine fear of persecution, and that a reasonable person in his circumstances would fear persecution if returned to his native country. *Gao*, 299 F.3d at 272. We find substantial evidence supports the conclusion that Celaj did not demonstrate an objectively well-founded fear of future persecution.

We believe that substantial evidence supports the conclusion that Celaj has not demonstrated an objectively reasonable fear of future persecution. Celaj has failed to show why threats that were not fulfilled in 2000 and 2001 would be carried out upon his return to Albania several years later. Celaj provided no evidence that he would be subject to harsher treatment if returned to Albania. *See Boykov*, 109 F.3d at 417 (finding no reasonable basis to believe alien would be persecuted upon return to Bolivia where court determined past treatment did not amount to persecution and she presented no evidence that she would suffer less humane treatment if returned).

12

In fact, the 2002 State Department Country Report states, "[t]here were no confirmed cases of political killings by the Government or its agents" and "no reports of politically motivated disappearances." J.A. 144-45. Rather, the report's citation to "high levels of violent crime" related to "individual or clan vigilante actions," and supports the IJ's finding that Albania is an area of general unrest and instability. J.A. 145.

Finally, the BIA noted the Celajs were able to live in Albania for a year without incident before fleeing to the United States. *See Castillo v. INS*, 951 F.2d 1117, 1122 (9th Cir. 1991) (finding an alien's "continued safe and undisturbed residence in his homeland after the occurrence of the event which is alleged to have induced his fear" significant in determining objective reasonableness of fear of future persecution).

Under our deferential standard of review, we find substantial evidence supports the conclusion that Celaj did not have an objectively well-founded fear of future persecution.[5]

*B. Withholding of Removal and Convention Against Torture Claims*

Celaj also appeals the denial of his claims for withholding of removal and relief under the Convention Against Torture. Because both claims require meeting a significantly higher burden of proof than a claim for asylum, we find the decision to deny these claims was supported by substantial evidence.

To be eligible for withholding of removal, an applicant must show that it is more

---

[5]Because Celaj fails to meet the objective component of a well-founded fear of future persecution, we need not decide whether he had a genuine subjective fear of future persecution.

likely than not that he will be persecuted if returned to his native country. 8 U.S.C. § 1231(b)(3). An applicant seeking relief under the Convention Against Torture must establish "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Because Celaj could not meet his burden of establishing past persecution or a well-founded fear of persecution, he has not provided evidence sufficient to support either a withholding of removal or Convention Against Torture claim. *See Chen*, 376 F.3d at 223 ("An alien who fails to establish that he or she has a well-founded fear of persecution, so as to be eligible for a grant of asylum, necessarily will fail to establish the right to withholding of removal"); *Wang v. Ashcroft*, 368 F.3d 347, 348 (3d Cir. 2004) ("the standard for invocation of the [Convention Against Torture] is more stringent than the standard for granting asylum").

## IV.

We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary. For the foregoing reasons, we conclude that substantial evidence supports the BIA and IJ's decisions to deny relief and we will accordingly deny the petition for review.