

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-14-2007

# Jiang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4229

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Jiang v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1483.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1483

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4229
_____

ALI DONG JIANG,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A97-660-222)
_____

Submitted under Third Circuit LAR 34.1(a)
December 14, 2006

Before: SMITH and ROTH, <u>Circuit Judges</u>, YOHN*, <u>District Judge</u>

(Filed March 14, 2007  )
_____

**OPINION**
_____

_____

*Honorable William H. Yohn, Jr., Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

**ROTH**, Circuit Judge:

Ai Dong Jiang petitions for review of the order of the Board of Immigration Appeals (BIA) affirming the Immigration Judge's (IJ) denial of his application for asylum, withholding of removal, and protection pursuant to the United Nations Convention Against Torture (CAT). We will deny the petition.

## I. Factual and Procedural History

Jiang is a native and citizen of China. The Department of Homeland Security (DHS) detained Jiang at Miami International Airport on October 2, 2004, when he tried to enter the United States without appropriate entry documents. He was given an initial interview upon arrival and a credible fear interview the next day. On October 6, he was served with a Notice to Appear for a removal proceeding, and charged as an arriving alien who failed to present or possess valid entry documentation. The two DHS interviews, Jiang's testimony accompanied by affidavit, a letter from Jiang's wife, and an alleged abortion certificate from a Chinese hospital provide the entirety of the factual support for Jiang's claims.

DHS conducted an initial interview with Jiang upon his attempted October 2, entry. Jiang stated he had left China because birth control officials were trying to arrest him. He claimed his wife was forced to have an abortion and that he had filed a lawsuit against the birth control officials. He also claimed he was arrested by the birth control officials and detained for two days. He asserted that he escaped and crossed the border into Thailand.

The next day DHS conducted a credible fear interview. Jiang stated he left China

2

because his wife became pregnant for the second time in 2002. He claimed that family planning officials discovered the pregnancy and demanded an exorbitant payment. When Jiang told the officials he could not pay, he said they arrested and held him in the family planning offices for two to three days. Jiang claims that during his detention his wife was taken to the hospital for a forced abortion and held in the hospital for over ten days. Jiang stated he escaped from the family planning office and was told by his family about the abortion, but that he never saw his wife. He then claims he went to the government to file a complaint against the family planning office. He stated that he failed in his complaint and later managed to escape from family planning officials when they tried to arrest him.

In his application for asylum, Jiang submitted a sworn affidavit. He claimed that after he ran away from his detention at the family planning office, he went to the local government to complain and was ignored. Jiang also asserted that he had attempted to leave China illegally in 1991 and was arrested, fined, and beaten by police. He claimed that he now fears being "fined, jailed, and tortured" if returned to China because he came to the U.S. with the help of a smuggler.

Jiang testified at his removal hearing on April 23, 2004. On direct examination Jiang claimed he was released after being detained by family planning officials. He also testified that upon being released he had seen his wife, who showed him the abortion certificate. During the same testimony Jiang made several assertions inconsistent with his prior statements. He again asserted that he had escaped from detention, but that he had not filed

a complaint with the government, that instead he had filed a lawsuit, and that he had made an oral complaint to government officials. Jiang also offered evidence of his wife's abortion through documentation alleged to be an abortion certificate. This was accompanied with a letter from his wife which vouched for the authenticity of the abortion certificate and claimed the hospital was trying to blackmail her. The government contacted the hospital to investigate the certificate's authenticity (the patient's name was redacted). The hospital responded that the document appeared to be a forgery because the hospital's official stamp was different and no doctor at the hospital matched the name of the physician on the certificate.

The IJ denied Jiang's applications. The IJ found Jiang lacking in credibility and denied his application of asylum and withholding of removal. The IJ accepted Jiang's story that he had been punished in 1991 for trying to leave China. However, the IJ found that Jiang failed to carry his burden of proof by showing it was more likely than not he would be tortured upon return and denied his application for protection under the CAT. The BIA adopted the IJ's reasoning, affirmed his decision in a per curiam ruling, and dismissed the appeal.

## II. **Jurisdiction and Standard of Review**

We have jurisdiction of Jiang's appeal pursuant to § 242(a) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1252(a) to review timely filed petitions for review of final orders of the BIA.

Where, as here, the BIA affirms and adopts the decision of an Immigration Judge, we review the IJ's decision as if it were the decision of the Board. *Dia v. Ashcroft*, 353 F.3d 228, 245 (3d Cir. 2003). We review the findings of fact and of credibility under the substantial evidence standard. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). The decision must be affirmed "unless the evidence not only supports a contrary conclusion, but compels it." *Zubeda v. Ashcroft*, 333 F.3d 463, 471 (3d Cir. 2003) (quoting *Abdille v. Ashcroft*, 242 F.3d 477, 484 (3d Cir. 2001). In general, "minor inconsistencies do not provide an adequate basis for an adverse credibility finding." *Fiadjoe v. Ashcroft*, 411 F.3d 135, 153 (3d Cir. 2004). Furthermore, "the discrepancies must involve the 'heart of the asylum claim.'" Gao, 299 F.3d at 272.

## III. Analysis

### A. Application for Asylum

An asylum applicant bears the burden of proving either past persecution or a well-founded fear of future persecution. 8 C.F.R. § 208.13(b).[1] To establish eligibility for asylum on the basis of past persecution an applicant must show (1) an incident, or incidents, that rise to the level of persecution; (2) that is on account of one of the statutorily protected grounds and (3) is committed either by the government or forces the government is either unwilling

---

[1]The standard for withholding deportation is stricter than that for asylum, thus "a petitioner unable to satisfy the asylum standard fails, *a fortiori*, to satisfy the former." *Mediouni v. INS*, 314 F.3d 24, 26 (1st Cir. 2002). Because this Court finds that Jiang did not satisfy the standard for asylum, we need not address the issue of withholding deportation.

or unable to control. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003). An asylum applicant who demonstrates past persecution is entitled to the presumption of a well founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). Absent this presumption, the applicant for asylum has a two-prong burden - he must demonstrate both (1) subjective and (2) objective fear of persecution. *Gao*, 299 F.3d at 272. The applicant must first demonstrate his subjective fear by "showing that [he] has a genuine fear" of persecution, and then he must demonstrate his objective fear with evidence "that a reasonable person in [his] circumstances would fear persecution if returned to [his] native country." *Id.* (citing *Elnager v. INS*, 930 F.2d 784, 786 (9th Cir. 1991)).

An individual who has been or who has a well-founded fear of being "forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion." 8 U.S.C. § 1101(a)(42). This basis for "refugee" eligibility has been extended by decision to include the spouse of an individual who meets the forced abortion, sterilization, and population control provision of 8 U.S.C. § 1101(a)(42). *In re C-Y-Z*, 21 I & N Dec. 915, 918 (BIA 1997).

We will deny the petition for review because substantial evidence supports the determination that (1) Jiang was not credible and (2) he failed to establish past persecution or a well founded fear of future persecution.

We agree with the findings of the IJ, as adopted by the BIA, that Jiang was not

6

credible. His statements and testimony as set out above contain inconsistencies which, taken together, call his credibility into question. Moreover, the purported abortion certificate, the letter from Jiang's wife, and the overseas investigation also support a finding of adverse credibility. Taken in isolation each of the inconsistencies in Jiang's story might be considered "minor." *Fiadjoe*, 411 F.3d at 153. In this instance, Jiang's application for asylum is based entirely on the claim of his wife's forced abortion. Inconsistences in evidence or admissions about the circumstances of the abortion involve the "heart of the asylum claim." *Gao*, 299 F.3d at 272. Based on the record, the conclusions of the IJ were supported by substantial evidence and must be upheld.

**B. Withholding of removal under the Convention Against Torture**.

An alien may obtain withholding of removal pursuant to the CAT if he shows it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2); *Celaj v. Attorney General*, 471 F.3d 483, 491 (3d Cir. 2006). The standard for relief under the Convention "has no subjective component, but instead requires the alien to establish, by objective evidence, that he is entitled to relief." *Auguste v. Ridge*, 395 F.3d 123, 151 (3d Cir. 2005) (quoting *Sevoian v. Ashcroft*, 290 F.3d 166, 174-75 (3d. Cir. 2002). The objective evidence to be considered in evaluating a CAT claim includes "[e]vidence of past torture inflicted upon the applicant;" "[e]vidence of gross, flagrant or mass violations of human rights within the country of removal;" and "[o]ther relevant information regarding conditions in the country of removal." *Id*. at 134.

7

The petitioner has failed to carry his burden of showing it is more likely than not he would be tortured if removed. *Celaj*, 471 F.3d at 491. The IJ found Jiang credible on the point that he may have been punished in 1991 by the Chinese government. The IJ's finding of credibility concerning Jiang's past punishment neither established that torture occurred nor proved the likelihood of future torture.[2] Jiang makes only vague references to Chinese law and the State Department's Human Rights Report on China as evidence that he will be imprisoned in a labor camp for one year and that torture occurs frequently in these camps. These generalizations are insufficient for a showing that Jiang will more likely than not be subject to torture. *Auguste*, 395 F.3d at 154-55; *see also Zubeda*, 333 F.3d at 478 ("reports of generalized brutality within a country" are not enough to qualify for relief under the CAT).

## IV. Conclusion

For the reasons set forth above, we conclude that substantial evidence supports the BIA and IJ's decisions to deny relief and we will accordingly deny the petition for review.

---

[2]Evidence of past *torture*, as opposed to past *punishment*, is a factor in determining whether torture is more likely to occur. *See Lavira v. Attorney General of the U.S.*, — F.3d —, 2007 WL 570257, *7 (3d Cir. 2007) (citing 8 C.F.R. § 1208.16(c)(3)) (emphasis added).

8