IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-40108
_____


JOSE LUIS RODRIGUEZ-GUTIERREZ,

                                        Petitioner,

                        versus

IMMIGRATION AND NATURALIZATION SERVICE,

                                        Respondent.

_____

Petition For Review of an Order of the
Immigration and Naturalization Service
(A35 473 985)
_____
(February 1, 1995)

Before REAVLEY, DUHÉ and PARKER, Circuit Judges.

REAVLEY, Circuit Judge:[*]

        Jose Luis Rodriguez-Gutierrez was charged with deportability

under 8 U.S.C. §1251 (a)(1)(B) (Supp. 1994).  The Immigration

Judge ("IJ") determined that Rodriguez was deportable.  The IJ

denied Rodriguez's applications for suspension of deportation and

adjustment of status, but granted voluntary departure.  Rodriguez

appealed the denial of suspension of deportation to the Board of

_____

[*]Local Rule 47.5 provides:  "The publication of opinions
that have no precedential value and merely decide particular
cases on the basis of well-settled principles of law imposes
needless expense on the public and burdens on the legal
profession."  Pursuant to that Rule, the Court has determined
that this opinion should not be published.

Immigration Appeals (the "BIA"). He also moved to reopen deportation proceedings with respect to the adjustment of status application. The BIA dismissed the appeal and denied the motion to reopen. Rodriguez appeals. We reverse and remand for proceedings consistent with this opinion.

## BACKGROUND

Rodriguez was caught with undocumented aliens in his car near the border in 1982. At the time he had legal immigration status in the United States. He gave the INS agent a false name and birthdate, because he did not want them to know his true identity or immigration status. He also allegedly told him that he had recently entered the country by swimming across the river. At his deportation hearing, Rodriguez testified that he had lied to the Immigration officers because he was afraid. He testified that he did not swim across the river, but instead entered legally. The Immigration Judge found that this testimony lacked credibility and that he entered the country illegally. The IJ determined that he was deportable.[1]

Rodriguez applied for suspension of deportation under 8 U.S.C. §1254(a)(1)(1970). The IJ found that Rodriguez was not eligible for suspension of deportation because he interrupted his seven years of continuous residency in the U.S. (a prerequisite for suspension of deportation) by leaving the U.S. on several

_____

[1] Rodriguez was also convicted by a federal court of illegally transporting undocumented aliens, but the conviction was later set aside because of his youth at the time of the offense and his subsequent good behavior.

2

occasions while his deportation proceedings were pending. On appeal, the Board of Immigration Appeals (the "BIA") upheld the denial of application for suspension, but on different grounds. The BIA called into doubt the IJ's finding regarding continuous residency in light of a Fifth Circuit case, which overruled a BIA case relied on by the IJ in his findings regarding continuous residency. The BIA upheld the IJ's determination, however, because it concluded that the immigrant was not a person of good moral character (another prerequisite for suspension of deportation), because he gave "false testimony" at his deportation hearing.

Rodriguez also applied for an adjustment of status, but the IJ found that he lacked one of the prerequisites for adjustment of status -- a current visa application. He moved to reopen the case for adjustment of status at the time of his appeal to the BIA, because his wife had applied for a visa for him before that appeal was addressed. The BIA did not address whether Rodriguez met the requirements for adjustment of status, but instead refused to exercise its discretion to reopen the case to address his request for an adjustment of status.

Rodriguez appeals both the suspension of deportation determination and the BIA's refusal to reopen his case for adjustment of status.

DISCUSSION

A.   **Suspension of Deportation**

3

The Attorney General may, in her discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence in the case of an alien who has been found to be deportable and 1) has been physically present in the U.S. for a continuous period of not less than seven years immediately preceding the date of the application for relief; 2) establishes the he is a person of good moral character during that period of time; and 3) is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to the alien's spouse, parent, or child, who is a citizen of the U.S. or an alien lawfully admitted for permanent residence.  8 U.S.C.§1254(a)(1).

### 1.    Continuous Presence

If an immigrant's absence from the U.S. was brief, casual and innocent, it may not interrupt an immigrant's continuous physical presence in this country.  8 U.S.C. 1254(b)(2)(Supp. 1994).  If the departure involved criminal intent, continuous residency is interrupted.  Laredo-Miranda v. INS, 555 F.2d 1242, 1245-46 (5th Cir. 1977).  The IJ found that Rodriguez's departure in 1982 did not break his continuous presence because, even though he was found deportable for having entered without inspection and convicted of transporting aliens, he was not convicted for aiding and abetting an entry, and therefore, lacked the necessary criminal intent to constitute a meaningful interruptive entry.  He concluded, however, that subsequent trips to Mexico did constitute interruption, because under Matter of

4

Becerrra-Miranda, 12 I & N Dec. 358 (BIA 1967), an alien who departed during the pendency of deportation proceedings had interrupted his permanent residence in the U.S.

The BIA noted that this conclusion was incorrect in light of subsequent Fifth Circuit case law. We agree. The Fifth Circuit rejected Matter of Becerra-Miranda and held that a more subjective inquiry must be made before an alien's departure can be held to have interrupted his status. Molina v. Sewell, 983 F.2d 676, 679-80 (5th Cir. 1993). According to Molina, the IJ must look to the 1) length of time the alien is absent; 2) the purpose of the visit; and 3) whether travel documents were required. Id. at 680. The IJ concluded that, if Matter of Becerra-Miranda's objective test did not bar a finding of continuous presence, Rodriguez's departures would be considered brief, casual and innocent under the subjective test. Indeed, the record shows that each departure was for a very short period of time, one or two days, and travel documents were not required. The purpose of the first visit was a brief visit with family friends; the purpose of the second was to assist a family member in distress; and the purpose of the third was to find witnesses for his deportation hearing.

**2. Good Moral Character**

The BIA did not disturb the IJ's refusal to suspend deportation in this case, because it held that even if Rodriguez met the continuous presence requirement, he did not meet the good moral character requirement for suspension of deportation. Title

5

8 provides that no person shall be found to be a person of good moral character who, during the time for which good moral character is required to be established is or was "one who has given false testimony for the purpose of obtaining any benefits under this chapter."  8 U.S.C.§1101(f)(6).

The IJ found that Rodriguez was deportable, because he entered the country illegally.  In doing so, the IJ decided that Rodriguez's testimony at his deportation hearing lacked credibility.  The BIA concluded that the IJ's determination that Rodriguez's testimony lacked credibility was tantamount to a finding that Rodriguez was not a person of good moral character because he gave false testimony at the hearing.

A finding that testimony lacked credibility does not alone justify the conclusion that false testimony has been given. False testimony means knowingly giving false information with an intent to deceive.  A lack of credibility does not necessarily stem from a conclusion that the speaker intends to deceive.  As a California district court stated, to assume that "a witness whose testimony is not accepted by the trier of fact is a perjurer and not a person of good moral character . . . is not only legally invalid, but is contrary to the basic sense of fairness upon which our legal system is founded."  Acosta v. Landon, 125 F.Supp. 434, 441 (S.D. Cal. 1954).

The BIA incorrectly concluded that Rodriguez was not a person of good moral character, because it erroneously held that a finding that testimony lacks credibility is the equivalent to a

6

finding that the witnesses has given false testimony.  The IJ

discussed the effect of Rodriguez's conviction for transporting

aliens on a finding of good moral character and, in doing so,

found that Rodriguez did have good moral character.  In addition,

in granting voluntary departure, the IJ made an implicit finding

of good moral character.  See 8 U.S.C. §1254(e)(providing that

good moral character is a prerequisite for a grant of voluntary

departure).  This record supports this conclusion.

**B.    Denial of Motion to Reopen To Apply for Adjustment of Status**

The status of an alien may be adjusted by the Attorney

General, in her discretion, if certain conditions are met.

Rodriguez applied for adjustment of status at his deportation

hearing.  The IJ found that Rodriguez could not be granted an

adjustment of status, because he did not meet the requirement

that "an immigrant visa [be] immediately available to him at the

time the application is filed."  After the hearing and before his

appeal was decided, Rodriguez filed a motion to reopen with the

BIA because his wife had successfully filed a visa petition

during that time period.  The Board did not find that Rodriguez

was not eligible for an adjustment of status, but instead

concluded that he did not warrant a favorable exercise of

discretion.[2]

---

[2]    As the BIA noted in its opinion, "[w]hen the Board
determines that reopening is not warranted in the exercise of
discretion, the question of statutory eligibility for the
requested relief need not be considered."  BIA Opinion at 6
(citing INS v. Bagamasbad, 97 S.Ct. 200, 201 (1976)).

The BIA found that Rodriguez: 1) entered into the U.S. without inspection in 1982 despite the fact that he was a lawful permanent resident; 2) admitted that he gave a false name and birth date to border patrol agents at the time of his arrest; 3) lied to the immigration officials about his name because he was caught transporting aliens in his car; 4) attempted to cover-up his behavior by giving false testimony at his hearing; and 5) failed to give testimony in support of "false statements" in his affidavit that border patrol agents coerced his statement by use of a gun and physical intimidation. All of which "show[ed] a blatant disrespect for the immigration laws of this country."

The Board's denial of a motion to reopen is reviewed for abuse of discretion. INS v. Doherty, 112 S.Ct. 719, 724 (1992). An abuse of discretion has occurred if the Board improperly characterizes the misconduct of the alien and gives little weight to the favorable factors for the purpose of discretionary reopening. See Diaz-Resendez v. INS., 960 F.2d 493, 495 (5th Cir. 1992)(holding that a decision by the Board may be found arbitrary if the Board fails to address meaningfully all material factors); Ng v. INS, 804 F.2d 534, 538 (9th Cir. 1986)(holding that BIA is required to "show proper consideration of all factors when weighing equities and denying . . . relief.").

All of the factors pointed to by the BIA as those supporting a denial of relief in this case stem from Rodriguez's actions taken in response to his arrest in 1983 for transporting illegal aliens. Rodriguez was 26 years old at the time of this incident.

8

Since that time a federal court has set aside the criminal conviction for this offense because of a recognition that the defendant's age at the time of the incident and his subsequent admirable record indicated that Rodriguez deserved clemency.  The BIA also again focused on Rodriguez's "false statements" at his hearing.  The trier of fact at his hearing, the IJ, weighed the evidence before him and concluded that Rodriguez entered the country illegally.  In doing so, he did not brand Rodriguez a liar.  Indeed, the IJ went on to find, despite his credibility assessment, that Rodriguez was a person of good moral character.

The BIA gave only cursory acknowledgment to the positive factors supporting a grant of relief in this case.  Rodriguez has lived in this country for sixteen years (since he was 19 years old).  He has been married to a United States citizen for fourteen years and is a father to six children (fathered five), all of whom are fully dependent on him, live at home, and are United States citizens.  His mother-in-law, a widow who lives with a disabled daughter, relies on Rodriguez for assistance. One of his son's is an "at risk" patient, requiring specialized medical care.  "Generally, favorable factors such as family ties, hardship, length of residence in the United States, etc., will be considered as countervailing factors meriting favorable exercise of administrative discretion." Matter of Arai, 13 I. & N. Dec. 494, 496 (BIA 1970).  The immigrant's status as an immediate relative is a "special and weighty equity."  Matter of Ibrahim, 18 I. & N. Dec. 55, 57-58 (BIA 1981).

Rodriguez has a stable employment record and pays a mortgage on his home. He is an active member of his church and participates in community activities in a positive way. He was terminated early from probation because of his "excellent adjustment to supervision" and the "probation officer's prognosis that Mr. Rodriguez would remain violation free." This determination entitled him to a dismissal of his conviction. He has indeed remained violation free. He has also expressed remorse for lying to patrol agents and transporting the aliens. The record contains numerous affidavits and letters in support of his petition.

Rodriguez has no family in Mexico. His mother, brothers, stepbrother, sister, and stepsister, all of whom are U.S. citizens or lawful permanent residents, live in the United States. Deportation would clearly cause great hardship to his wife and family due to separation. It would also cause great economic hardship to his family. It is unlikely that he could find employment in Mexico which would allow him to pay his mortgage or support his family. As a result, his family, all American citizens, would probably become dependant on the American Government for financial assistance as welfare recipients. Therefore, deportation in this case would also cause hardship on the Government.

The BIA abused its discretion by not meaningfully addressing the positive equities in this case and by improperly characterizing the negative equities in this case.

10

CONCLUSION

The record demonstrates that Rodriguez meets the requirements for a suspension of deportation. Subsequent case law has shown that the IJ's determination with respect to the continuous presence requirement was legally incorrect. The IJ stated in his opinion that absent considerations regarding the pending deportation proceedings, Rodriguez's absences from the country were brief, casual and innocent and would not disrupt a continuous presence finding. The IJ also found that Rodriguez was a man of good moral character. The BIA's basis for finding to the contrary was not legally valid. The IJ also concluded that deportation would result in extreme hardship to Rodriguez's wife and family. The record supports this conclusion. We reverse the BIA's dismissal of Rodriguez's appeal concerning his application for a suspension of deportation and remand for proceedings consistent with this opinion.

We also reverse the BIA's denial of Rodriguez's motion to reopen.[3] Our determination that the BIA abused its discretion in

_____

[3]    The Government argues that on remand the BIA must still refuse to grant an adjustment of status because Rodriguez is excludable under 8 U.S.C. §1182(a)(6)(E). This issue is not relevant to this appeal, since the BIA did not address Rodriguez's statutory eligibility for adjustment of status, but instead made a purely discretionary decision to deny the request to reopen the case. We note, however, that the Government misapplies section 1182. This provision states that an alien who has knowingly encouraged, induced, assisted, abetted, or aided any other alien to enter or try to enter the United States in violation of law is excludable. As the IJ in this case noted, Rodriguez was convicted for transporting illegal aliens rather than for aiding and abetting an entry. Therefore, he is not excludable under section 1182(a)(6)(E). The Government has also previously argued that Rodriguez is not eligible for an

12

improperly weighing the equities in addressing Rodriguez's request to reopen for an adjustment of status does not mean that Rodriguez should, as a matter of law, receive an adjustment of status.  We hold merely that, in exercising its discretion to grant or deny the motion to reopen for an adjustment of status, the BIA must balance all of the equities in a meaningful way.  We trust that on remand they will do so and their determination of the issue will be an equitable one.

    REVERSED AND REMANDED.

---

adjustment of status because he entered the country without inspection.  The provision for adjustment of status has recently been amended, however, to allow those with an entry without inspection to apply for an adjustment of status while still in the United States.  <u>See</u> 8 U.S.C. §1255(i), *added by* Pub. L. No. 103-317, §506(c) (1994).