# United States Court of Appeals

## For the First Circuit

No. 11-2136

BELTSY REYNOSO,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Torruella, Ripple* and Howard,
<u>Circuit Judges</u>.

<u>Ondine G. Sniffin</u> on brief for petitioner.
<u>Jesse Lloyd Busen</u>, Trial Attorney, United States Department of
Justice, Office of Immigration Litigation, <u>Stuart F. Delery</u>, Acting
Assistant Attorney General, Civil Division, and <u>Erica B. Miles</u>,
Senior Litigation Counsel, Office of Immigration Litigation, on
brief for respondent.

March 26, 2013

---

\* Of the Seventh Circuit, sitting by designation.

**RIPPLE, <u>Circuit Judge</u>**.  Beltsy Reynoso, a native and citizen of the Dominican Republic, was granted conditional permanent residency in the United States in 2002 on the basis of her marriage to a United States citizen.  Sometime following that grant, Ms. Reynoso and her husband began divorce proceedings.  When she later sought to remove the conditions on her residency, she filed her application without her husband co-signing the relevant form.  Although his signature would have been necessary in the ordinary course, Ms. Reynoso sought to employ an alternate method in which she was required to prove that the marriage, although now ended, had been bona fide.  The Department of Homeland Security ("Department" or "DHS")[1] denied her petition upon concluding that she had not carried her burden of establishing that she had entered her marriage for reasons other than obtaining immigration status in the United States.  It therefore terminated her conditional resident status and initiated removal proceedings against her.

In removal proceedings, Ms. Reynoso renewed her request to remove the conditions on her residency and also sought cancellation of removal.  The immigration judge ("IJ") found that Ms. Reynoso had not established that she had entered her marriage in good faith and denied the request for removal of conditions.

---

[1]  For ease of reading, we use the terms "Department" or "DHS" as inclusive of its predecessor entities, including the Immigration and Naturalization Service, as well as its current subdivisions, including the United States Citizenship and Immigration Services.

The IJ further determined that Ms. Reynoso was ineligible for cancellation of removal because she had given false testimony in the proceedings and therefore could not establish the requisite good moral character. Consequently, the IJ ordered Ms. Reynoso's removal, and the Board of Immigration Appeals ("BIA" or "Board") dismissed her appeal.[2] Ms. Reynoso now petitions this court for review of the decision of the Board.[3] Because the administrative record does not require the conclusion that Ms. Reynoso entered her marriage in good faith and because the Board did not commit legal error in denying her request for cancellation of removal, we deny the petition for review.

# I

## BACKGROUND

### A. Facts

Ms. Reynoso married Lemuel Martínez on January 20, 2001. On March 7, 2001, Martínez filed a Form I-130 petition on Ms. Reynoso's behalf based on their marriage, and the Department approved the petition in July 2001. Ms. Reynoso subsequently filed an application to adjust her status to that of a permanent

---

[2]   The Board had jurisdiction pursuant to 8 C.F.R. §§ 1003.1(b)(3) and 1240.15.

[3]   We have jurisdiction pursuant to 8 U.S.C. § 1252(a). We review Ms. Reynoso's cancellation claim because she has raised a question of law. See 8 U.S.C. § 1252(a)(2)(D).

resident, which the Department approved on February 4, 2002. Because Ms. Reynoso's marriage was less than twenty-four months old on the date on which her residency application was approved, the approval was conditional.[4]

In November 2003, Ms. Reynoso submitted her first petition to remove the conditions on her permanent residency and requested that the Department waive the requirement that her husband co-sign the petition ("the joint filing requirement");[5] she sought the waiver on the ground that she and Martínez had begun divorce proceedings.[6] DHS denied the waiver petition in August 2004 because Ms. Reynoso had failed to provide sufficient documentary evidence of her marital relationship. In September

---

[4] See id. § 1186a(a)(1), (h)(1). "Conditional" permanent residency refers to the initial residency grant in an adjustment case based on a marriage less than two years old at the time the application for adjustment is granted. Conditional residents enjoy the benefits of residency, but must apply for removal of the "conditions" after two years. That is, in this class of cases, the law requires a second petition through which DHS has an opportunity to reevaluate the bona fides of the underlying marriage. Further, during the term that residency is "conditional," the alien is subject to particular rules for revocation if the agency determines that the underlying marriage is "improper." See id. § 1186a(b). In any event, at the conclusion of the two-year conditional residency period, the status expires. If the alien has failed to timely petition to remove the conditions, or if a petition is unsuccessful--perhaps because the agency now deems the marriage not bona fide--conditional resident status is simply terminated and, as occurred here, removal proceedings are initiated. If the alien successfully petitions for removal of the conditions, he becomes simply a permanent resident. See generally id. § 1186a(c).

[5] See id. § 1186a(c)(1)(A).

[6] The divorce was finalized in January 2005.

-4-

2004, Ms. Reynoso filed a second petition, which was denied in March 2005, because her divorce had not been finalized at the time that she filed her petition.[7]

Ms. Reynoso filed a third petition requesting a waiver of the joint filing requirement in April 2005, and she was interviewed in connection with that petition in October 2006. In that interview, Ms. Reynoso stated, consistent with a written statement that she had provided in connection with the petition, that she had married Martínez in good faith on January 20, 2001, and that the couple had separated in October 2002. She also stated that she gave birth to a child in August 2003, while the couple was still married but separated, and that Martínez was not the child's father.

In support of her claim that the marriage to Martínez had been entered in good faith, Ms. Reynoso submitted the following documentation: a letter from a bank dated September 10, 2004, indicating that she and Martínez had held a joint account since October 27, 2001; a copy of a life insurance enrollment form dated January 25, 2002, which listed Martínez as the beneficiary of Ms. Reynoso's life insurance policy; and copies of Ms. Reynoso's

---

[7] The waiver for which Ms. Reynoso applied refers to a marriage which "has been terminated." 8 U.S.C. § 1186a(c)(4)(B).

2002 tax returns, which were filed as "married filing separately."[8] While her third waiver petition was pending, Ms. Reynoso remarried.

DHS denied the third waiver petition and issued a notice of termination of conditional resident status on February 4, 2009. The denial letter cited a "lack of convincing documentary evidence" that the marriage was bona fide, i.e., that it "was not entered into for the sole purpose of procuring [her] admission as an immigrant."[9] DHS then placed her in removal proceedings because her conditional resident status had been terminated and she had no continuing authorization to remain in the United States. See 8 U.S.C. § 1227(a)(1)(D)(i). Before the IJ, Ms. Reynoso pursued her petition for removal of the conditions on her residency and also filed an application for cancellation of removal. See id. §§ 1186a(b)(2), 1229b(b)(1). On March 10, 2010, while her removal proceedings were pending, Ms. Reynoso's second husband filed a visa petition on her behalf with DHS.[10]

## B. Administrative Proceedings

On July 29, 2010, an IJ held a merits hearing on Ms. Reynoso's petition to remove the conditions on her residency

---

[8] A.R. 225, 227.

[9] Id. at 199.

[10] The merits of this petition are not at issue in the current proceedings, and the record does not disclose its current status.

and her cancellation of removal application. In addition to the evidence submitted with her petition at the administrative level, Ms. Reynoso offered her own new statement as well as several letters, including one indicating an attempt to contact her former husband

Ms. Reynoso was the only witness to testify at the hearing. She testified that she had dated her first husband for approximately one year before they married on January 20, 2001. According to Ms. Reynoso, the "marriage functioned very well" in the beginning, but, over time, her husband "bec[ame] very distant."[11] It ended after an argument in which Martínez confessed to Ms. Reynoso that he was attracted to men. She also testified that, once she had been placed in removal proceedings, she located Martínez and he pledged to assist her.

On cross-examination, Ms. Reynoso indicated that she and Martínez separated during the summer of 2002. Ms. Reynoso admitted that, when she filed her first petition to waive the conditions in November 2003, the letter she wrote accompanying the petition indicated that she and her husband had separated in October 2002.[12] Ms. Reynoso then testified that she left the marital home in April,

---

[11] A.R. 91–92.

[12] See id. at 216. Not only did she identify October 2002 as the operative date in her November 2003 letter, she reiterated the same date in a statement submitted in connection with her removal proceedings in 2010. See id. at 137.

May or the summer of 2002. When confronted with these discrepancies, her testimony became confused. She stated that she knew "what [she] put" in her previous statements and she was "aware of the dates" to which she was currently testifying.[13] She said that she had copies of her prior statements and had reviewed them. She attempted to reconcile the inconsistencies by stating that October 2002 was an "approximate" time, and she provided that date only to establish during "which part of the year . . . this happened."[14] She later stated that the couple separated in August or October 2002 and that her previous statement that he had left in October provided only a "month of reference."[15]

Ms. Reynoso also gave somewhat confusing testimony about her prior addresses. She testified that she and Martínez had lived on Hampshire Street in Lawrence, Massachusetts. She indicated that they had begun living at that address in the summer of 2000, six or eight months or possibly a year before they were married.[16] Ms. Reynoso claimed that they had resided in the same house for approximately one year and that she had left the marital home a few weeks after she and Martínez had separated. Although she claimed that she had met Martínez in 1999 and that they had begun dating in

---

[13]  Id. at 100.

[14]  Id. at 102.

[15]  Id. at 113.

[16]  Id. at 103.

2000, she could not recall how long Martínez had lived on Hampshire Street before they had started cohabitating, nor could she recall if he had lived somewhere else before the time that they started dating.

Ms. Reynoso also testified that she had lived and worked in New York City, not Lawrence, prior to moving in with Martínez. When asked whether she ever had lived on Bunker Hill in Lawrence, she responded that she had stayed at that address when she visited a friend named Luisa Castillo. When asked why she previously had indicated to DHS that she lived at that address from September 1994 to March 2000, she stated that she had provided that address in response to a question about her address when she moved to Lawrence, and she had not lived there in 1994.[17]

On July 29, 2010, the IJ issued an oral decision finding Ms. Reynoso removable as charged, denying her request for waiver of the joint filing requirement and denying her application for cancellation of removal. The IJ stated that, on the subject of her employment and residence history, Ms. Reynoso's testimony was "at great variance from information that she provided previously to the Government in connection with her application for adjustment of status."[18] In reaching that conclusion, the IJ reviewed each item of evidence that Ms. Reynoso had submitted before the agency and

_____

[17]  Id. at 115-16.

[18]  Id. at 62-63.

before the immigration court in support of her petition, along with her testimony, and noted numerous discrepancies: the dates on which she had lived in Massachusetts, where in Massachusetts she had lived, when she met Martínez, where he lived, how long she had lived with Martínez, and when each spouse had left the marital home. The IJ also observed that, although Ms. Reynoso had provided a letter showing that they had lived on Hampshire Street during the time that they were married, it did not indicate how long the couple lived there, and there were no contemporaneous documents evidencing their cohabitation. The other documentary evidence was limited, and, in the IJ's view, problematic: There was no proof that the life insurance policy for Ms. Reynoso listing Martínez as the beneficiary ever had been issued, and the bank statement was dated well after their separation and listed a different address for the couple. Although the IJ took note of an affidavit from a friend who was present at the wedding, the IJ also observed that Ms. Reynoso had not come forward with any affidavits from friends, family or acquaintances concerning "the nature of the [couple's] relationship [or] the reason that the relationship ended."[19] The IJ therefore concluded that Ms. Reynoso had not met her burden of establishing that her marriage to Martínez was entered in good faith.

---

[19] Id. at 67.

The IJ further concluded that, because Ms. Reynoso gave false information to immigration authorities and to the immigration court, she could not establish good moral character for purposes of cancellation of removal. Finally, given that the IJ believed that Ms. Reynoso "ha[d] previously engaged in a sham marriage for purposes of obtaining [i]mmigration benefits," she denied as a matter of discretion Ms. Reynoso's alternate request for a continuance to await disposition of the new visa petition filed on her behalf by her second husband.[20]

The BIA affirmed the IJ's decision. The BIA pointed to the inconsistencies in Ms. Reynoso's testimony and the lack of documentation of a shared marital life as grounds for concluding that she had not established that she had entered her first marriage in good faith. Similarly, the BIA determined that the IJ had not erred in denying Ms. Reynoso's application for cancellation of removal on the ground that she was statutorily ineligible to apply for such relief given her lack of good moral character. The Board again noted the false information that Ms. Reynoso had provided in her immigration proceedings as the basis for its finding.

Ms. Reynoso timely sought review in this court.

---

[20]   Id. at 67-68. The IJ noted that it was the "Court's estimation" that Ms. Reynoso had entered into a sham marriage, but acknowledged that there had been no formal determination of that fact. Id.

-11-

**DISCUSSION**

**A. Removal of Conditions on Residency and the Good Faith Marriage Requirement**

**1. Standard of Review**

We review for substantial evidence the agency's determination that Ms. Reynoso did not establish that she entered into her marriage to Martínez in good faith. See Cho v. Gonzáles, 404 F.3d 96, 102 (1st Cir. 2005). Under the substantial evidence standard, the decision of the Board "must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elías-Zacarías, 502 U.S. 478, 481 (1992) (internal quotation marks omitted). Reversal is appropriate only where "a reasonable factfinder would have to" reach a contrary conclusion. Id. Here, the Board issued its own decision on these issues, and it is the final agency decision under review. See Pulisir v. Mukasey, 524 F.3d 302, 307-08 (1st Cir. 2008).[21]

---

[21] The Government contends that we should review the decision of the Board and the IJ together, citing Settenda v. Ashcroft, 377 F.3d 89, 92-93 (1st Cir. 2004). See Gov't Br. 16. Settenda instructs us to review both decisions "[w]hen the BIA does not render its own opinion[] . . . and either defers [to] or adopts the opinion of the IJ." Settenda, 377 F.3d at 93 (fourth alteration in original) (internal quotation marks omitted). That is not an apt description of the record in this case. The BIA rendered its own decision. It affirmed, but did not adopt, the decision of the IJ.

**2. Removal of Conditions on Residency, Section 1186a**

Section 1186a of Title 8 of the United States Code governs the processes for obtaining conditional resident status, removing the conditions on residency and related matters. Generally speaking, the statute directs that aliens who were eligible to receive permanent residency upon a spouse's successful petition are in that status conditionally for a period of two years. Before the expiration of those two years, conditional permanent residents are directed to submit, jointly with their petitioning spouse, a new petition to remove the conditions on their residency and to appear together for a joint interview on the petition. 8 U.S.C. § 1186a(c)(1). However, the statute allows the alien spouse to request a waiver of the joint filing requirement in limited circumstances: if removal would lead to extreme hardship, if the alien spouse has been battered or subjected to extreme cruelty by the petitioning spouse, or, as relevant here, if "the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated." Id. § 1186a(c)(4). The accompanying regulations provide instructive guidance regarding how an alien might carry the burden of establishing that a marriage was entered into in good faith. Specifically, the regulations identify the relevant inquiry as "the amount of commitment by both parties to the marital relationship." 8 C.F.R. § 1216.5(e)(2). Evidence of that commitment might include

-13-

"[d]ocumentation relating to the degree to which the financial assets and liabilities of the parties were combined[]" or "[d]ocumentation concerning the length of time during which the parties cohabited after the marriage and after the alien obtained permanent residence[,]" in addition to evidence of any children born of the marriage. Id.[22] It bears repeating that "[t]he alien has the burden of proof on this issue. To carry this burden, [s]he must show that, at the time that the newlyweds plighted their troth, [s]he intended to establish a life with h[er] spouse."

---

[22] The regulations also refer to "[o]ther evidence deemed pertinent by" the relevant authorities. 8 C.F.R. § 1216.5(e)(2)(iv). In the instructions to the petition itself, the Department has identified a list of other such pertinent evidence, including: "[l]ease or mortgage contracts showing joint occupancy and/or ownership of your communal residence[,]" "[f]inancial records showing joint ownership of assets and joint responsibility for liabilities, such as joint savings and checking accounts, joint federal and state tax returns, insurance policies that show the other spouse as the beneficiary, joint utility bills, joint installments, or other loans[,]" along with third-party affidavits and other evidence that the alien "consider[s] relevant to establish that your marriage was not entered into in order to evade the U.S. immigration laws." Form I-751 Instructions (Rev. 01/12/11) at 2, available at http://www.uscis.gov/files/form/i-751instr.pdf. The courts of appeals have acknowledged that the range of potentially relevant evidence is broad. See Agyeman v. INS, 296 F.3d 871, 882-83 (9th Cir. 2002) ("Evidence of the marriage's bona fides may include: jointly-filed tax returns; shared bank accounts or credit cards; insurance policies covering both spouses; property leases or mortgages in both names; documents reflecting joint ownership of a car or other property; medical records showing the other spouse as the person to contact; telephone bills showing frequent communication between the spouses; and testimony or other evidence regarding the couple's courtship, wedding ceremony, honeymoon, correspondences, and shared experiences.").

-14-

McKenzie-Francisco v. Holder, 662 F.3d 584, 587 (1st Cir. 2011) (citations omitted).

### 3. Substantial Evidence Supports the Board's Conclusion

Ms. Reynoso's evidence in support of the bona fides of her marriage was as follows: her personal statement, a designation of beneficiary form for a life insurance policy through her employer on which she had handwritten Martínez's name, a letter from the couple's landlady in 2001 stating only the fact of their apartment rental, a letter from a bank from after the couple's separation that listed both names but included an address that was not the couple's alleged shared residence, a receipt issued to Martínez for the purchase of wedding rings and three statements by individuals who attested that they knew the couple.[23] The record discloses the birth of a child to Ms. Reynoso prior to her divorce from Martínez, but it is undisputed that the child was not born "to the marriage." See 8 C.F.R. § 1216.5(e)(2)(iii).

This limited record certainly cannot be said to require the conclusion that Ms. Reynoso's marriage to Martínez was bona fide. Indeed, Ms. Reynoso has failed to submit any contemporaneous records evidencing commingling of assets and liabilities, and the documentary evidence of cohabitation is limited to the landlady's

---

[23] The letters range in length from two sentences to five sentences and provide virtually no detail about the couple or their relationship. See A.R. 141-43.

-15-

statement, which provides no detail whatsoever.  Nor can it be said that Ms. Reynoso's statement or testimony necessarily overcomes the weaknesses in the documentary evidence, given that, on details both large and small--the length of the couple's cohabitation or the residences of the couple during the period in which they were dating--her oral and written statements contain numerous inconsistencies.  Before this court, Ms. Reynoso cites no precedent for her assertion that the Board's decision is not supported by substantial evidence.[24]

---

[24]  Indeed, our study of the cases suggests that the record before us more closely mirrors cases in which the agency's determination of lack of bona fides has been upheld as opposed to cases in which that determination has been overturned.  Compare McKenzie-Francisco v. Holder, 662 F.3d 584, 587 (1st Cir. 2011) (holding that the IJ's conclusion that a marriage was not entered in good faith was supported by substantial evidence because, in addition to the petitioner's credibility problems, the record "lack[ed] the type of memorabilia that marriages typically produce"), Yohannes v. Holder, 585 F.3d 402, 404-06 (8th Cir. 2009) (holding that substantial evidence supported the Board's decision where the alien's testimony regarding details of the marriage was inconsistent, and the documentary record was limited to joint tax returns and a brief, undated affidavit from the citizen spouse), and Oropeza-Wong v. Gonzáles, 406 F.3d 1135, 1148-49 (9th Cir. 2005) (holding that substantial evidence supported determination that the marriage was not entered into in good faith where there was "little corroborative evidence" of the alien's testimony and there were problems with the documents, including that there was no proof that "life insurance and . . . automobile title" documents ever had been filed), with Cho v. Gonzáles, 404 F.3d 96, 103-04 (1st Cir. 2005) (holding that the record compelled the conclusion that a marriage was bona fide where husband and wife engaged in lengthy courtship, cohabitated, enrolled jointly in health insurance policy, opened joint bank accounts, filed joint tax returns, entered auto financing agreements, opened joint credit card and otherwise suspicious timing of separation immediately following immigration interview was explained by alien's revelation of abuse by spouse).

Throughout the proceedings, Ms. Reynoso has attempted to explain the inconsistencies in her testimony as the result of the passage of time. Although time certainly may cloud memories, her explanation is not so compelling that the factfinder <u>was required</u> to credit it, and with it, her account of her marriage. <u>See</u> <u>Yohannes</u> v. <u>Holder</u>, 585 F.3d 402, 406 (8th Cir. 2009) (rejecting a similar contention based on a fourteen-year lapse of time and noting that the alien "bears the burden of proof, and the regulations make no special provisions for an individual seeking a waiver many years after the events that gave rise to his petition"). Further, it is worth noting that, although her removal hearing occurred in 2010, some eight years after the separation, Ms. Reynoso began waiver proceedings in 2003, roughly one year after the couple's separation; at least one of the statements about which she was questioned was submitted with the original petition in 2003.[25]

Ms. Reynoso also contends that the IJ's statement that she would not make a finding of a "sham marriage" was inconsistent with the conclusion that Ms. Reynoso had not established that her marriage was bona fide. She asks us to remand because the inconsistency makes the decision "arbitrary and capricious."[26] There are two significant difficulties with this argument.

---

[25] <u>See</u> A.R. 216.

[26] Pet'r's Br. 3.

First, we are concerned with the final decision of the agency, here, the decision of the BIA. The Board did not adopt this portion of the IJ's opinion, or any other; instead, it specifically stated that it had reviewed "whether the parties have met the relevant burden of proof[] . . . under a de novo standard." A.R. 3; see also Lin v. Mukasey, 521 F.3d 22, 26 (1st Cir. 2008) (noting that, where the BIA does not adopt the IJ's opinion, we review the ruling of the BIA standing alone). The Board itself made no similar comment regarding whether a specific finding of a "sham marriage" was warranted on the evidence, instead holding only that Ms. Reynoso had failed to carry her burden of proof.

Second, Ms. Reynoso's argument turns on her interpretation of the statute dealing with sham marriage determinations, 8 U.S.C. § 1154(c).[27] This provision, however, has a single directive: It prohibits issuance of a visa to an individual if the Attorney General determines that the individual

---

[27] Section 1154(c) of Title 8 provides:

Notwithstanding the provisions of subsection (b) of this section no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

-18-

ever had sought status on the basis of a sham marriage. See 8 U.S.C. § 1154(c). Here, neither the IJ nor the BIA was adjudicating a new visa petition for Ms. Reynoso. Instead, they were charged with making a determination about permanent resident status based on a visa petition that already had been granted years ago by the Department, the validity of which was not in question in the removal proceedings. Ms. Reynoso did have a second such visa petition pending at the time of her removal proceedings, filed by her second husband, but the contemporaneous review of that petition by the Department was an entirely separate administrative proceeding. See Oluyemi v. INS, 902 F.2d 1032, 1034 (1st Cir. 1990); Matter of Aurelio, 19 I. & N. Dec. 458, 460 (BIA 1987) (noting that "[t]he proceedings in which visa petitions are adjudicated are separate and apart from exclusion and deportation proceedings" and that, consequently, "it is well established that immigration judges have no jurisdiction to decide visa petitions, a matter which is solely within the authority of the district director").[28] Section 1154(c), therefore, had no application to these proceedings, and the IJ's failure to cite it, or render a decision under it, in no way conflicts with the entirely separate

---

[28] It is clear on the face of the record that the IJ understood the distinction. Upon noting that no sham marriage determination had been made under the relevant section, the IJ continued that Ms. Reynoso did "not appear to be barred . . . from a new visa petition submitted by her current husband." A.R. 14 (emphasis added).

-19-

determination that Ms. Reynoso had failed to establish the bona fides of her first marriage in her removal proceedings.[29]

The Board's decision to deny removal of the conditions on Ms. Reynoso's residency, is, therefore, supported by substantial evidence, and we shall not disturb it.

## B. Cancellation of Removal

### 1. Standard of Review

In order to demonstrate eligibility for cancellation of removal without the benefit of permanent resident status, an alien must establish various things: physical presence in the United States over a relevant period, absence of certain offenses in any criminal history, extreme hardship to a qualifying relative in the event of removal and good moral character for the ten years preceding the application. 8 U.S.C. § 1229b(b)(1). The IJ concluded that Ms. Reynoso was barred from establishing the

---

[29] Furthermore, the context of the IJ's statement provides even greater clarity about the matter. The IJ made this remark in the portion of her opinion regarding Ms. Reynoso's request to continue the removal proceedings to allow the Department to adjudicate her second visa petition. If granted, that petition by her current spouse could have provided an alternate basis for a grant of permanent resident status.

The IJ refused the requested continuance, citing her own conclusion that the first marriage had not been bona fide as the reason that she would not exercise her discretion in favor of Ms. Reynoso on this matter. It should be noted that this decision of the IJ to deny the continuance--the only portion of the opinion in which the sham marriage discussion appears--is not challenged in this petition for review.

requisite good moral character because she had "given false testimony for the purpose of obtaining any benefits under this chapter," 8 U.S.C. § 1101(f)(6),[30] and the Board affirmed.

---

[30] Section 1101(f) of Title 8 reads in its entirety:

(f) For the purposes of this chapter--
No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was--

    (1) a habitual drunkard;

    (2) Repealed. Pub.L. 97-116, § 2(c)(1), Dec. 29, 1981, 95 Stat. 1611.

    (3) a member of one or more of the classes of persons, whether inadmissible or not, described in [various paragraphs of section 1182 not applicable];

    (4) one whose income is derived principally from illegal gambling activities;

    (5) one who has been convicted of two or more gambling offenses committed during such period;

    (6) one who has given false testimony for the purpose of obtaining any benefits under this chapter;

    (7) one who during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period;

    (8) one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section); or

    (9) one who at any time has engaged in conduct described in section 1182(a)(3)(E) of this title

Ms. Reynoso contends that the Board's conclusion on this matter was erroneous and asks us to remand the case for full consideration of all of the elements of her cancellation claim.

As a threshold matter, we must determine the availability and scope of our review over such a conclusion. Our cases have not always been consistent or clear with respect to setting forth the applicable standards under these circumstances, although we believe they routinely have outlined, in their methodology, the appropriate course. Compare Opere v. U.S. INS, 267 F.3d 10, 13 (1st Cir. 2001) (referring to a determination under § 1101(f) as "a non-discretionary question of fact [that] we review . . . for

---

(relating to assistance in Nazi persecution, participation in genocide, or commission of acts of torture or extrajudicial killings) or 1182(a)(2)(G) of this title (relating to severe violations of religious freedom).

The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character. In the case of an alien who makes a false statement or claim of citizenship, or who registers to vote or votes in a Federal, State, or local election (including an initiative, recall, or referendum) in violation of a lawful restriction of such registration or voting to citizens, if each natural parent of the alien (or, in the case of an adopted alien, each adoptive parent of the alien) is or was a citizen (whether by birth or naturalization), the alien permanently resided in the United States prior to attaining the age of 16, and the alien reasonably believed at the time of such statement, claim, or violation that he or she was a citizen, no finding that the alien is, or was, not of good moral character may be made based on it.

8 U.S.C. § 1101(f) (footnote omitted).

substantial evidence" (emphasis added)) with Toribio-Chávez v. Holder, 611 F.3d 57, 64-65 (1st Cir. 2010) (identifying the petitioner's argument that he had not provided false testimony for purposes of § 1101(f) as raising a "question of law" and proceeding to engage in substantial evidence review). We now pause to make explicit what our prior cases, read together, have suggested.

As we made clear in our most recent case addressing the matter in some detail, Restrepo v. Holder, 676 F.3d 10 (1st Cir. 2012), our starting point is the statutory text. Our review of cancellation is circumscribed by the interplay of two provisions of the governing statute: first, the jurisdiction-stripping provision of § 1252(a)(2)(B)(i) and, second, the savings clause of § 1252(a)(2)(D):

> The regime that Congress has set in place narrowly defines our authority to review a petition [of a cancellation decision]. The provision codified at 8 U.S.C. § 1252 divests federal courts of jurisdiction to review any judgment regarding the granting of relief relative to cancellation of removal. The statute thereby leaves the matter of whether an alien should receive such relief to the Attorney General's discretion and precludes our review in the absence of a colorable constitutional claim or question of law.

Restrepo, 676 F.3d at 15 (citation omitted) (internal quotation marks omitted).

As Restrepo further notes, good moral character determinations come in two varieties: those that are mandated by the statute, because the IJ has made a finding that the alien has satisfied one of the provisions of § 1101(f), and those that are

-23-

purely discretionary, i.e., those made for any reason not specifically identified in the statute. See id. at 15.

The latter type of determination is removed from our review by § 1252(a)(2)(B)(i). Any challenge to a discretionary determination that an applicant lacks good moral character is simply a challenge to a "judgment regarding the granting of" cancellation of removal, over which the statute dictates we have no authority. However, because the statute requires a determination that an applicant lacks good moral character when the IJ finds the alien to have satisfied any of the provisions of § 1101(f), challenges to the applicability of this section are, by their very nature, "questions of law," over which § 1252 preserves our jurisdiction. 8 U.S.C. § 1252(a)(2)(D). Whether our cases have used the "question of law" moniker is of little import; it is clear that the non-discretionary, legal nature of the determination at issue has preserved our jurisdiction. Compare Restrepo, 676 F.3d at 16 (calling a determination under § 1101(f) a "non-discretionary ground for denial that is within the scope of our jurisdiction"), with Toribio-Chávez, 611 F.3d at 64 (calling the same issue a reviewable "question of law"). As with all questions of law arising in our review of Board decisions, our review of the applicability of the statute to the facts as found is de novo. Toribio-Chávez, 611 F.3d at 62 ("We review the BIA's legal conclusions de novo, with appropriate deference to the agency's

-24-

interpretation of the underlying statute in accordance with administrative law principles.").

Therefore, in a challenge such as the one presented here, the question regarding the applicability of the statute is, in essence, a challenge to the embedded factual finding that an alien has satisfied one of the statute's provisions, such as the finding that the alien "has given false testimony." See 8 U.S.C. § 1101(f)(6). That the alien indeed has satisfied one of these provisions is a necessary piece of the legal inquiry, but is itself a factual finding. Like all factual findings, we review the finding that an alien has committed the requisite act (here, for example, of providing false testimony), for substantial evidence-- and our cases, regardless of the way they have phrased the inquiry, indeed have engaged in this manner of review of § 1101(f) determinations. See Restrepo, 676 F.3d at 16; Toribio-Chávez, 611 F.3d at 65; Opere, 267 F.3d at 13.

We have before us a determination that an alien lacked good moral character based on the mandatory provisions of § 1101(f). Following the course our cases have outlined, we are presented with a legal question about the applicability of the statute that we review de novo. The critical finding, and, indeed, the real substance of our inquiry, is the finding that the alien gave false testimony. We review this question for substantial evidence and will reverse only where, on review of the record, "a

-25-

reasonable factfinder would have to" reach a contrary conclusion. Elías-Zacarías, 502 U.S. at 481.[31]

### 2. The Board's Decision to Deny Cancellation

For purposes of § 1101(f)(6), "false testimony 'is limited to oral statements made under oath' and, specifically, 'only to those misrepresentations made with the subjective intent of obtaining immigration benefits.'" Restrepo, 676 F.3d at 16 (quoting Kungys v. United States, 485 U.S. 759, 780 (1988)). Ms. Reynoso objects that, in finding that she had given false testimony, the IJ did not cite any specific misstatements in oral testimony and instead relied on inconsistencies between prior written statements and her in-court testimony.

Ms. Reynoso misreads the oral ruling of the IJ and the decision of the Board. In the oral ruling, the IJ specifically

---

[31] Ms. Reynoso never has raised a challenge to whether the statements identified as false by the IJ and accepted by the Board were made during the period for which good moral character must be established according to the statute. Specifically, she never has challenged the correctness of the Board's decision in In re Ortega-Cabrera, 23 I. & N. Dec. 793 (BIA 2005). We therefore have no occasion to express an opinion about the merits of such a challenge. See Duron-Ortiz v. Holder, 698 F.3d 523, 527-28 (7th Cir. 2012) (upholding the Board's decision in Ortega-Cabrera); cf. Cuadra v. Gonzáles, 417 F.3d 947, 951-52 (8th Cir. 2005) (holding that the prior statutory scheme limited the period for which good moral character had to be shown to the period before the filing of the application, but not confronting the statutory amendments by the stop-time rule and the Board's subsequent decision in Ortega-Cabrera).

-26-

stated that Ms. Reynoso could not "establish[] . . . prima facie eligibility for cancellation of removal because she has provided false information both to the Immigration authorities and to this Court."[32]  The Board's opinion cites instances in which, before the immigration court itself, Ms. Reynoso gave inconsistent testimony, including Ms. Reynoso's multiple in-court answers to questions about how long she and Martínez lived together; at various points in her testimony she indicated that the duration of their relationship was one year or two-and-one-half years, and she also gave many different answers to the question of when they had stopped living together:  April, May, June, August and October of 2002.  The fact that Ms. Reynoso gave directly inconsistent answers on the stand is substantial evidence in support of the Board's conclusion that she falsely testified to the immigration court.[33]

---

[32]  A.R. 14.

[33]  Ms. Reynoso objects that the IJ's oral decision also made mention of numerous inconsistencies between the in-court statements and prior statements included in the record on forms and in connection with immigration interviews.  Although these latter inconsistencies could form the basis for a determination that she had given false testimony if they were confirmed orally and under oath, see In re R-S-J-, 22 I. & N. Dec. 863, 865-66 (BIA 1999), the record before us is not sufficient to conclude that an oath was administered when the earlier out-of-court statements were made, cf. id. at 864.  In assessing the decision of the Board, we have not relied on these additional inconsistencies identified by the IJ.

Further, we already have rejected Ms. Reynoso's alternative explanation that the passage of time made it difficult for her to remember.  See supra Part I.A.3.  Although that is a plausible explanation for her inconsistent responses on the stand, the agency was not required by the record before it to accept that

-27-

We have little difficulty in concluding that such factual misstatements to the immigration court do constitute false testimony for purposes of § 1101(f)(6), as this court and others repeatedly have held.  See, e.g., Restrepo, 676 F.3d at 16.  Any falsehood made with the subjective intent of obtaining an immigration benefit, even one seemingly immaterial to the inquiry at hand, undermines the applicant's good moral character and therefore can be the subject of a § 1101(f)(6) determination. Section 1101(f)(6) "imposes no materiality requirement.  Rather, the provision 'denominates a person to be of bad moral character on account of having told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits.'"  Opere, 267 F.3d at 14 (citation omitted) (quoting Kungys, 485 U.S. at 780); see also Gonzalez v. Sec'y of Dep't of Homeland Sec., 678 F.3d 254, 261 (3d Cir. 2012).  In the present case, Ms. Reynoso was unable to identify with any precision whatsoever--and indeed gave conflicting testimony regarding--how long she and her former spouse had cohabited and related details. Given that the validity of this marriage was the primary issue to be decided in her proceedings and that the length of cohabitation is identified directly by the regulations as part of the relevant inquiry, see 8 C.F.R. § 1216.5(e)(2), the Board's decision on this matter is supported by substantial evidence.  Cf.

_____

explanation.

-28-

Gonzalez-Maldonado v. Gonzáles, 487 F.3d 975, 978-79 (5th Cir. 2007) (reversing a decision that the alien had given false testimony under § 1101(f) for having listed his attorney's address as his own, because it could not be said that the provision of a false address was made to "influence [a] favorable outcome" of the proceedings).

Ms. Reynoso's final contention is that the IJ's conclusion was essentially a credibility finding, and "[a] finding that testimony lacked credibility does not alone justify the conclusion that false testimony has been given." Rodríguez-Gutiérrez v. INS, 59 F.3d 504, 507 (5th Cir. 1995). Rodríguez-Gutiérrez, however, has no application to the present situation. In that case, the IJ had found that the petitioner had not testified credibly, but also had found that he had good moral character. The BIA determined that "the IJ's determination that Rodríguez's testimony lacked credibility was tantamount to a finding that Rodríguez was not a person of good moral character because he gave false testimony at the hearing." Id. The Fifth Circuit rejected the BIA's conclusion. See id. at 508. Here, by contrast, there was an explicit finding by the IJ that the testimony that Ms. Reynoso provided to the court was "false."[34] Because that determination, affirmed by the Board, is supported by substantial evidence, Ms. Reynoso's argument must fail.

---

[34] A.R. 14.

-29-

## Conclusion

The conclusion of the Board that Ms. Reynoso did not carry her burden of establishing that she had married her first husband in good faith is supported by substantial evidence. Accordingly, the agency's decision denying her petition to remove the conditions on her residency must stand. Further, we perceive no legal error in the Board's conclusion that Ms. Reynoso is subject to a mandatory bar to a finding of good moral character on the basis of false testimony in her immigration proceedings. Therefore, the agency did not err in denying her application for cancellation of removal.

**PETITION DENIED.**