# United States Court of Appeals
## For the First Circuit

No. 02-1492

SADEK MEDIOUNI,

Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

ON PETITION FOR REVIEW FROM
THE BOARD OF IMMIGRATION APPEALS

Before

Selya, <u>Circuit Judge</u>,
Stahl, <u>Senior Circuit Judge</u>,
and Lipez, <u>Circuit Judge</u>.

Maureen O'Sullivan, with whom Ilana Greenstein, Jeremiah Friedman, Harvey Kaplan, and Kaplan, O'Sullivan & Friedman, LLP, were on brief for petitioner.
Brenda M. O'Malley, Attorney, Office of Immigration Litigation, with whom Robert D. McCallum, Jr., Assistant Attorney General, Civil Division, and Christopher C. Fuller, Senior Litigation Counsel, Office of Immigration Litigation, were on brief for respondent.

December 20, 2002

**STAHL, <u>Senior Circuit Judge</u>.** Sadek Mediouni petitions for review of the decision of the Board of Immigration Appeals to deny him asylum, withholding of deportation, and relief under the United Nations Convention Against Torture. While we perceive some support in the record for Mediouni's asylum claim, we cannot say that the record compels the conclusion that he demonstrated a well-founded fear of persecution. Accordingly, we affirm the Board's denial.

## I. BACKGROUND

Mediouni was born in Algeria in 1962. His claims are set forth against the backdrop of Algeria's struggle against the French colonial presence beginning in the 1950s; its independence from France in 1962; the insurrection by Islamic fundamentalists against the secular government in the 1980s; and the ensuing civil war that began in 1992.[1]

Mediouni's father, a Tunisian-born naturalized French citizen and former French military police officer, was stationed in Algeria for approximately seventeen years toward the end of the period of French colonial government. Mediouni's mother was Algerian. Until he was an adult, Mediouni was stateless: he lacked

---

[1]Mediouni presented documentary evidence and testimony concerning the history of and current conditions in Algeria, which the Board appeared to accept. Neither the Immigration Judge nor the Board impugned his credibility or the accuracy of the documentary evidence.

Algerian citizenship, had no identification documents, and was denied government services and the ability to travel freely.

After the end of the war against the French, Mediouni's father fled Algeria in fear of his life, but returned soon afterward because his wife missed their home. In 1962, shortly before Mediouni's birth, his father was kidnaped and eventually declared dead. Mediouni's mother married an Arab Algerian soon thereafter.

Until he was nine years old, Mediouni suffered harassment and threats because he was the son of a French police officer. At that point, his family moved to a different city, where his background was unknown. There, he did not experience further harassment or abuse until 1980, when he applied for an identity card that he needed to take academic exams. Following Mediouni's application for an identity card, the Algerian government conducted an investigation of him. As a result, he received cold and suspicious treatment from neighbors and school authorities.

Although he eventually acquired Algerian citizenship (through the interventions of a judge who was a relative), over the next four years Mediouni was detained and interrogated by the police on four separate occasions. In 1988, he opened a video rental store. During the three years that he owned the store, the Algerian authorities repeatedly interfered with his business and

investigated him for distributing videos of "Anti-Algerian content."

On November 16, 1991, Mediouni entered the United States as a visitor for pleasure. He remained in the United States beyond his authorization date. In 1992, civil war erupted in Algeria. On July 27, 1995, the Immigration and Naturalization Service issued an Order to Show Cause charging Mediouni as deportable under former section 241(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(B)(i) (1995).

Mediouni conceded that he was deportable as charged, but sought relief in the form of asylum and withholding of deportation. He also sought prevention of deportation under the Convention Against Torture.[2] On February 21, 1997, an immigration judge conducted a hearing, and later denied Mediouni's applications for relief and protection. On April 10, 2002, the Board dismissed his appeal.

---

[2]Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85. The United States ratified the Convention in 1994; in 1998, Congress passed legislation to implement the Convention's requirement, contained in article 3, section 1, that "[n]o state . . . expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." Foreign Affairs Reform and Restructuring Act of 1998 § 2242, Pub. L. No. 105-277, 112 Stat. 2681-761, 822-23 (1998) (codified at 8 U.S.C. § 1231 (Supp. V 1999)).

## II. **DISCUSSION**

We review the Board's findings of fact and credibility under a "substantial evidence" standard. Yatskin v. INS, 255 F.3d 5, 9 (1st Cir. 2001); Cordero-Trejo v. INS, 40 F.3d 482, 487 (1st Cir. 1994). Board determinations of statutory eligibility for relief from deportation, whether via asylum or withholding of deportation, are conclusive if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacharias, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). This standard of review is quite deferential: we will not reverse unless "the record evidence would compel a reasonable factfinder to make a contrary determination." Aguilar-Solis v. INS, 168 F.3d 565, 569 (1st Cir. 1999); see also Arkansas v. Oklahoma, 503 U.S. 91, 113 (1992) (under general principles of administrative review, we will not "supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence"). Deference is not due, however, if the Board's findings and conclusions are "based on inferences or presumptions that are not reasonably grounded in the record, viewed as a whole, or are merely personal views of the immigration judge." Cordero-Trejo, 40 F.3d at 487 (internal citations omitted).

We begin with the denial of Mediouni's asylum claim. Because the standard for withholding deportation is more stringent

than that for asylum, "a petitioner unable to satisfy the asylum standard fails, a fortiori, to satisfy the former." Velasquez v. Ashcroft, 305 F.3d 62, 64 n.2 (1st Cir. 2002) (citing Alvarez-Flores v. INS, 909 F.2d 1, 4 (1st Cir. 1990)).

An alien bears the burden of establishing eligibility for asylum by proving either past persecution or a well-founded fear of persecution on account of his or her race, religion, nationality, membership in a particular social group, or political opinion. Id. at 65 (citing 8 C.F.R. § 208.13(b)(1)). Mediouni does not assert that he suffered past persecution, so we deal only with his contention that he demonstrated a well-founded fear of persecution based on his membership in a particular social group or imputed political opinion.[3] Accordingly, he must show both a genuine subjective fear and an objectively reasonable fear of persecution on one of those protected grounds. Id. at 66.

The Board found that the record did not support the conclusion that Mediouni reasonably feared persecution because of his father's service with the police four decades ago. The documentary evidence, it said, indicated that only current members of security forces "or those who the terrorists might consider

---

[3]An imputed political opinion is an opinion attributed to the asylum applicant by his or her persecutors. Whether correctly or incorrectly attributed, an imputed political opinion "may constitute a reason for political persecution within the meaning of the Act." Vasquez v. INS, 177 F.3d 62, 65 (1st Cir. 1999) (quoting Ravindran v. INS, 976 F.2d 754, 760 (1st Cir. 1992)).

-6-

their current enemies" had reason to be fearful. The Board likened Mediouni's fears to those arising from employment in the military and from "general conditions of violence and civil unrest," neither of which ordinarily may support a claim of persecution. See id.; Matter of Fuentes, 19 I & N Dec. 658, 661 (BIA 1988). The Board also held that Mediouni did not satisfy the standards for eligibility for withholding of deportation or for relief under the Convention Against Torture.

As an initial matter, we believe that the Board inappropriately analogized Mediouni's claim to "dangers that arise from employment in the military in areas of domestic unrest." While the Board correctly stated that such dangers generally do not support asylum claims, this legal proposition simply does not apply to Mediouni's circumstances. Mediouni did not himself choose employment in the military or law enforcement, thereby risking attack as a "highly visible embodiment[] of the power of the state." Fuentes, 19 I & N Dec. at 661. Rather, he is associated with the police solely by virtue of his kinship ties with his father, a former officer. In Fuentes, the Board held that status as a former policeman is an immutable characteristic, and that mistreatment resulting from such status could be found to be persecution on account of political opinion or membership in a particular social group. Id. at 662. A similar argument can be

made that Mediouni, as the son of a former military police officer, is not categorically precluded from sustaining an asylum claim.

Nonetheless, we affirm the Board's conclusion that Mediouni did not adduce sufficiently compelling evidence that his fear of persecution, based on his kinship with a colonial-era police officer, was objectively reasonable. Conceivably, the Board could have inferred from the record that family members such as Mediouni are at risk despite the passage of decades. A 1993 United States Department of State report noted that individuals whose high-profile associations with disfavored groups had long since ended had been targeted for attack, including former Marxist Party officials and a former national television director. Three years later, the State Department reported that Algerian government officials and security service members, as well as their families, were attacked.

Moreover, Mediouni points to record evidence as to Islamic fundamentalists' recent invocations of colonialism to foment anti-French and general xenophobic sentiment. The 1996 State Department report also states that "[t]errorists attacked civilians whom they regarded as instruments of the State or whose lifestyles they considered in conflict with Islamic values."

While this evidence may permit an inference that the son of a deceased colonial-era military police officer could be targeted for attack by terrorists, it does not compel it. None of

the evidence in the record explicitly addresses the present persecution of family members of police officers dating from the French colonial government. Mediouni does not fall into any specific category of government official or public figure currently being singled out for terrorist attack, nor is he related to such a person.[4] Moreover, he has not offered any evidence that his lifestyle was or would be deemed offensive in the eyes of the Islamic radicals. In short, nothing in the record requires us to substitute our judgment for the Board's. See Aquilar-Solis, 168 F.3d at 569. Accordingly, we affirm the Board's asylum decision pursuant to the substantial evidence standard of review.[5]

The petition for review is denied.

---

[4]His father was not, apparently, a particularly high-level former official comparable to those cited in the 1993 State Department report.

[5]As Mediouni did not brief his claim under the Convention Against Torture on appeal, we consider the argument waived. Ortiz v. Gaston County Dyeing Machine Co., 277 F.3d 594, 597 (1st Cir. 2002).