# United States Court of Appeals
## For the First Circuit

No. 10-2013

JOSÉ LUÍS MCKENZIE-FRANCISCO,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Boudin, Selya and Howard,
Circuit Judges.

Raymond Sánchez Maceira on brief for petitioner.
Tony West, Assistant Attorney General, Civil Division, Terri J. Scadron, Assistant Director, Office of Immigration Litigation, and Anthony W. Norwood, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

December 5, 2011

**SELYA**, **Circuit Judge**.  The petitioner, José Luís McKenzie-Francisco, is a native and citizen of the Dominican Republic.  He seeks judicial review of a final order of the Board of Immigration Appeals (BIA) refusing to remove a condition encumbering his resident status and mandating his removal to his homeland.  After careful consideration, we deny the petition.

The stage can quickly be set.  In 1999, the petitioner entered the United States without inspection.  He married Jennifer Ann Cordero Estrella (Cordero), a United States citizen, on March 23, 2001.  As a result, the government granted him conditional resident status.  See 8 U.S.C. § 1186a(a)(1).

The marriage did not last.  The couple divorced in early 2004 (while the petitioner was still a conditional resident).  The petitioner nonetheless sought to remove the condition within the prescribed two-year period.  See id. § 1186a(d)(2).

Because the divorce prevented him from submitting the standard joint petition for removal of the condition, see id. § 1186a(c)(1), (d)(1), he applied for a hardship waiver of the petition requirement, see id. § 1186a(c)(4)(B).  In furtherance of this waiver request, he represented that his failed marriage had been entered into in good faith.  The waiver request did not fare well.  The appropriate immigration authorities denied it; terminated his lawful resident status, see id. § 1186a(c)(2)(A);

-2-

and initiated removal proceedings against him, see id. § 1227(a)(1)(D)(i).

In the immigration court, the petitioner renewed his waiver request. The immigration judge (IJ) received documentary evidence and heard testimony from both the petitioner and his ex-wife. At the close of all the evidence, the IJ concluded that the marriage had not been entered into in good faith and denied the waiver. She then ordered that the petitioner be removed to the Dominican Republic.

Discerning no error, the BIA affirmed the IJ's decision. This timely petition for judicial review followed.

The petitioner's main argument is that the IJ erred in finding that the marriage was a sham. As a secondary matter, he upbraids the IJ for stating that the sole purpose of the marriage was to circumvent the immigration laws. In the petitioner's view, this ipse dixit has unfair collateral consequences[1] and implicates his due process rights because he had no notice that his motivation would be in issue. We address these arguments sequentially, pausing first to sketch some of the governing legal principles.

In immigration cases, we review the agency's findings of fact in accordance with the familiar substantial evidence rule. Morgan v. Holder, 634 F.3d 53, 56-57 (1st Cir. 2011).

---

[1] The collateral consequence that the petitioner most fears is evident. An alien determined to have entered into a marriage for the purpose of evading the immigration laws is permanently ineligible for immigrant status. See 8 U.S.C. § 1154(c).

-3-

Consequently, we will honor such findings as long as they are "supported by reasonable, substantial and probative evidence on the record considered as a whole." Seng v. Holder, 584 F.3d 13, 17 (1st Cir. 2009) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). A credibility determination is a finding of fact, and we will set aside such a determination only if "the evidence is such as would compel a reasonable factfinder to reach a contrary conclusion." Id. We review conclusions of law de novo but with some deference to the agency's founded interpretation of statutes and regulations that it administers. Mariko v. Holder, 632 F.3d 1, 5 n.2 (1st Cir. 2011).

We turn from these general norms to the particular legal framework that pertains here. In order to convert conditional residency status into permanent residency status by virtue of marriage to a United States citizen, an alien and his citizen spouse must first submit a joint petition. 8 U.S.C. § 1186a(c)(1)(A); see also Castro-Soto v. Holder, 596 F.3d 68, 70 (1st Cir. 2010). If the alien is unable to do so because of an intervening divorce, he must secure a hardship waiver. 8 U.S.C. § 1186a(c)(4)(B). The availability of such a waiver depends in part on the alien's ability to demonstrate that he had entered into the marriage in good faith. Id.

The alien has the burden of proof on this issue. See Boluk v. Holder, 642 F.3d 297, 301-02 (2d Cir. 2011); see also 8

-4-

U.S.C. § 1186a(c)(4). To carry this burden, he must show that, at the time that the newlyweds plighted their troth, he intended to establish a life with his spouse. See Cho v. Gonzales, 404 F.3d 96, 102 (1st Cir. 2005). Employing this framework, we find ample support in the record for the determination that the petitioner's marriage was not contracted in good faith.

The IJ based her determination primarily on glaring contradictions in the divorced spouses' accounts of how their wedding was celebrated. These contradictions went to the heart of the matter because when a man and woman enter into a good-faith marriage, their wedding day is a significant (and, therefore, memorable) event.

In the case at hand, the petitioner and Cordero gave vastly divergent descriptions of their wedding day. The petitioner testified that their decision to wed was made on the spur of the moment and without any advance planning; that Cordero's parents were neither invited to nor present at the wedding; and that the participants, the minister, and two legally required witnesses were the only people in attendance. Cordero flatly contradicted this account. She vouchsafed that the couple had set the date in advance and had planned the wedding for a period of time. She also testified that her parents, along with her daughter and several of the petitioner's friends, were in attendance. The IJ inferred from

-5-

these major inconsistencies that neither the petitioner nor his ex-wife were credible witnesses.

Here, moreover, other testimony about the couple's relationship contributed to the IJ's doubts. For example, the petitioner claimed to have courted Cordero while she was living with her sister but could not remember how many live-at-home children Cordero's sister had. He also could not recall either the name of Cordero's child from a previous relationship or where Cordero worked. The petitioner's lack of familiarity with such rudimentary facts is powerful evidence that the couple never intended to establish a life together.

This web of inconsistencies and gaps in knowledge defies explanation. What is even more telling, however, is that the IJ observed a pas de deux that erased any doubts about the couple's lack of veracity. During Cordero's testimony, the IJ caught the petitioner signaling to Cordero by shaking his head. This was a blatant attempt to influence a witness's testimony by improper means and, as such, strongly supports an adverse credibility determination. See Falae v. Gonzáles, 411 F.3d 11, 15 (1st Cir. 2005).

The petitioner seeks refuge in the extrinsic evidence — but this evidence is thin. It is, for example, lacking the type of memorabilia that marriages typically produce. What evidence is in the record is a mixed bag. For instance, despite the fact that the

petitioner and Cordero filed joint income tax returns in 2001 and 2003, they presented no evidence that their finances were commingled.[2]

To say more on this point would be to paint the lily. Given the contents of the record, we are confident that the adverse credibility determination passes muster under the substantial evidence test. See, e.g., Syed v. Ashcroft, 389 F.3d 248, 252 (1st Cir. 2004); see also 8 U.S.C. § 1252(b)(4)(B). With that determination in place, the record scarcely compels a conclusion that the petitioner's marriage to Cordero was entered into in good faith. Accordingly, the hardship waiver was appropriately denied.

We need not linger long over the petitioner's plaint that his due process rights were compromised. This plaint is hopeless. The petitioner put the bona fides of his marriage in issue by requesting a hardship waiver. In view of this request, he cannot credibly complain that he lacked notice that the question of his intentions would be adjudicated.[3]

_____

[2] The petitioner adverts to the fact that the couple shared a "Sam's Club" card. But that is something that easily can be procured by any two unrelated individuals. Consequently, its existence is of little moment.

[3] Given the issues before her, the IJ was only required to determine whether the petitioner's marriage was entered into in good faith. See 8 U.S.C. § 1186a(c)(4)(B). The comment about which the petitioner complains — the IJ's statement concerning an intention to flout the immigration laws — was therefore dictum. As such, it cannot be used against the petitioner should he subsequently seek to return to the United States. See generally Munic. of San Juan v. Rullan, 318 F.3d 26, 28 n.3 (1st Cir. 2003)

-7-

We need go no further.  For the reasons elucidated above, we deny the petition for judicial review.

**So Ordered**.

---

(explaining that dictum has "no binding effect in subsequent proceedings in the same (or any other) case").