# United States Court of Appeals
## For the First Circuit

No. 12-2444

EMMANUEL MITATI KINISU,

Petitioner,

v.

ERIC H. HOLDER, JR.,
Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

Kevin R. Murphy on brief for petitioner.
Thankful T. Vanderstar, Attorney, Office of Immigration Litigation, U.S. Department of Justice, Stuart F. Delery, Principal Deputy Assistant Attorney General, and James E. Grimes, Senior Litigation Counsel, on brief for respondent.

August 1, 2013

**LYNCH, <u>Chief Judge</u>**.    Emmanuel Kinisu, a native and citizen of Kenya, petitions for review of an order of the Board of Immigration Appeals (BIA) affirming the ruling of an Immigration Judge (IJ).  The IJ ruled that Kinisu had not met the standard for waiver of the usual requirement of filing a joint petition with a spouse in order to remove the conditions from his conditional permanent residency.  Before the IJ, Kinisu, who did not file jointly with his ex-wife, had argued that he was entitled to removal of the conditions based on his marriage to an American citizen, despite the fact that the marriage had ended in divorce. This argument required proof that the marriage had been entered into in good faith, a burden that the IJ found Kinisu failed to meet.  Accordingly, the IJ determined that his resident status had been terminated and ordered his removal from the United States, subject to voluntary departure.  The BIA adopted and affirmed the IJ's decision.

In his petition to this court, Kinisu argues that the IJ evaluated his request for removal of conditions under an erroneous legal standard and that the IJ gave insufficient weight to Kinisu's testimony.  The first argument was not raised before the BIA, and so we have no jurisdiction to address it.  The second argument fails on its merits.  We deny the petition.

We begin by briefly reviewing the immigration statute's scheme governing marriage between an alien and a citizen. An alien who has been married to a U.S. citizen for fewer than 24 months may obtain an adjustment of his immigration status to that of a "conditional" permanent resident. See 8 U.S.C. § 1186a(a)(1), (h)(1). Generally, in order to remove the conditional status from the alien spouse's residency, the spouses must jointly submit a Form I-751 petition for removal of conditions and then participate in a joint personal interview. See id. § 1186a(c)(1). The petition must be filed within the 90-day period preceding the second anniversary of the status adjustment. Id. § 1186a(d)(2).

However, if the alien spouse is unable to meet the joint petition and interview requirements -- for instance, because the marriage has ended in divorce -- then he may apply for a waiver of those requirements. Id. § 1186a(c)(4)(B). In order to qualify for a waiver, the alien spouse must show that, inter alia, "the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through the death of the spouse) and the alien was not at fault in failing to meet the [joint filing] requirements." Id.; see 8 C.F.R. §§ 216.4(a)(1), 216.5(a).

Applicable regulations provide that all Form I-751 petitions "shall be accompanied by evidence that the marriage was

not entered into for the purpose of evading the immigration laws of the United States."  8 C.F.R. § 216.4(a)(5).  This evidence "may include":

> (I) Documentation showing joint ownership of property;
> (ii) Lease showing joint tenancy of a common residence;
> (iii) Documentation showing commingling of financial resources;
> (iv) Birth certificates of children born to the marriage;
> (v) Affidavits of third parties having knowledge of the bona fides of the marital relationship, or
> (vi) Other documentation establishing that the marriage was not entered into in order to evade the immigration laws of the United States.

Id.; see also 8 C.F.R. § 216.5(e)(2) (providing that, in considering an application for waiver of the joint filing requirements, the agency "shall consider evidence relating to the amount of commitment by both parties to the marital relationship").

II.

Kinisu came to the United States in May 1992 on a B-1 visa.  According to his testimony before the IJ, he met Theresa Johnson, a United States citizen, in 2000, and they dated for approximately two years.  On October 9, 2002, Kinisu and Johnson were married.  Approximately a year later, on October 23, 2003, Kinisu obtained an adjustment of his status to that of a conditional permanent resident.  The couple remained together until October 2005, when, according to Kinisu, Johnson left the marital

-4-

home.  They obtained a final judgment of divorce on December 28, 2006.

In June 2008, Kinisu filed a Form I-751 petition to remove the conditions on his residency, which included a request for waiver of the requirement that the petition be filed jointly with his spouse.  The United States Citizenship and Immigration Services (USCIS) conducted an interview with Kinisu on May 12, 2009, at which Kinisu gave testimony and submitted documents to support his claim that he had entered into his marriage with Johnson in good faith.  At the interview, Kinisu provided a tenancy at will agreement purporting to show his cohabitation with Johnson, a letter from his property manager to the same effect, three bank statements from a joint checking account, various tax and employment-related documents, and photographs of the wedding.

On August 6, 2010, USCIS denied Kinisu's petition.  The agency found that the documents Kinisu had provided did not support his claim that the marriage had been in good faith.  It noted, among other things, multiple discrepancies in Johnson's listed addresses on her W-2s; inconsistencies in the property manager's letter; the absence of tax transcripts to show that purported "married filing jointly" returns had actually been filed with the IRS; the absence of evidence of significantly commingled funds or joint assets; and the absence of photographs post-dating the wedding.  The agency also commented on Kinisu's failure to provide

any documentary evidence to show that he and Johnson participated in their local community as a married couple or that they "were creating a social or family relationship."

As a result of these findings, USCIS denied Kinisu's petition to remove the conditions on his residency and, accordingly, deemed his permanent resident status terminated as of July 28, 2006. The decision was not appealable, but the decision letter explained that Kinisu could request a review of the decision in removal proceedings. See 8 C.F.R. § 216.5(f).

On the same day that USCIS issued its decision letter, Immigration and Customs Enforcement issued a Notice to Appear to Kinisu, charging him with being removable from the United States as an alien lawfully admitted for permanent residence whose status had been terminated. In his responsive pleading, Kinisu conceded removability but requested relief in the form of a review of his petition for removal of conditions. In the alternative, he requested voluntary departure.

On June 13, 2011, the IJ held a hearing, at which Kinisu was the only witness. The IJ also reviewed the documents that Kinisu had submitted to USCIS. Kinisu testified at the hearing that, in July 2002, Johnson had moved into the apartment he rented, and they lived there together until their separation. However, Kinisu did not produce any leases from 2002, 2003, or 2004 showing that Johnson was a tenant at the apartment, allegedly because the

-6-

building was changing hands and the landlords did not want to give leases. Kinisu's only direct evidence of cohabitation was the tenancy at will agreement, dated May 1, 2005, which listed Kinisu as the tenant on the first page and only included Johnson's name on the last page, handwritten, with the notation "tenant." He also pointed to the unsworn letter from the property manager stating that Kinisu lived with Johnson at the apartment from July 2002 through October 2006. But Kinisu admitted on cross-examination that the letter was incorrect in at least one respect: Johnson had moved out of the apartment in October 2005, a year earlier than the ending date in the letter.

Kinisu testified that he and Johnson maintained separate bank accounts during the marriage but also opened a joint checking account. He claimed that he stopped putting money into the joint account when he realized how fast Johnson spent the money. Although Kinisu stated that the account was open from June 2002 through October 2006, he provided only three account statements -- from March, June, and July 2005 -- each of which showed minimal account activity. The couple had no other joint assets and maintained separate auto and health insurance policies.

Kinisu stated that he and Johnson began having problems in their marriage in 2003, primarily because Johnson was spending much of her time caring for her mother, who had cancer. Johnson's

mother died in April 2004, approximately a year and a half before the couple separated.

After hearing Kinisu's testimony and reviewing the USCIS documentary record and decision letter, the IJ issued an oral decision in which she found that Kinisu had failed to meet his burden of showing that his marriage had been in good faith. The IJ first noted that Kinisu had failed to provide any affidavits from third parties who could vouch for the bona fides of the marriage, see 8 C.F.R. § 216.4(a)(5)(v), including from Kinisu's own brother, who had lived in the United States during the marriage and knew Johnson. She then described the deficiencies in the documentary evidence that Kinisu had produced, including the limited bank account statements and the absence of joint leases for the alleged marital residence. Finally, the IJ questioned Kinisu's statement that the marriage deteriorated because of Johnson's mother's illness, since the mother had died long before the couple separated. Given these facts, the IJ concluded that Kinisu's Form I-751 petition had to be denied; she did, however, grant Kinisu voluntary departure.

Kinisu appealed the IJ's decision to the BIA. In his brief in support of the appeal, Kinisu argued that the IJ had given insufficient weight to his testimony and too much weight to the lack of documentary evidence. The BIA issued its decision on November 6, 2012, "adopt[ing] and affirm[ing]" the IJ's decision

"for the reasons set forth" therein.  The BIA did not perform its own analysis separate from reciting the IJ's findings.

                                    III.

         This court has jurisdiction to review a final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right."  8 U.S.C. § 1252(d)(1).  Where we have jurisdiction, we generally review the decision of the BIA, but when the BIA adopts the decision of the IJ, we review the IJ's decision directly.  Chhay v. Mukasey, 540 F.3d 1, 5 (1st Cir. 2008); Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003).

         We review the IJ's factual findings using the "substantial evidence" standard, Yatskin v. INS, 255 F.3d 5, 9 (1st Cir. 2001), a "quite deferential" standard of review under which we will treat the IJ's findings as "conclusive if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"  Mediouni v. INS, 314 F.3d 24, 27 (1st Cir. 2002) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)).  The credibility of a witness is a factual question. McKenzie-Francisco v. Holder, 662 F.3d 584, 586 (1st Cir. 2011). We will not reverse an IJ's findings of fact unless the record evidence would "compel a reasonable factfinder to reach a contrary determination."  Chhay, 540 F.3d at 5.

It was Kinisu's burden to prove that his marriage had been entered into in good faith. McKenzie-Francisco, 662 F.3d at 586-87. Kinisu's first argument to this court is that the IJ applied an erroneous legal standard in determining whether he met this burden. Specifically, he argues that the IJ treated third-party affidavits attesting to the bona fides of the marriage as required under the applicable regulation, whereas in fact such affidavits are one among a variety of documents that may be used to prove the good faith of the marriage.

This argument was not raised before the BIA. The law of this circuit is clear that, if a petitioner fails to press an argument before the BIA, "the petitioner has not exhausted [his] administrative remedies" as to that issue, which, "in turn, forecloses this court from exercising jurisdiction over [the issue]." Chhay, 540 F.3d at 5-6 (citing Sunoto v. Gonzales, 504 F.3d 56, 59 (1st Cir. 2007); Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004)). We thus have no jurisdiction to address Kinisu's first argument.

Kinisu also renews the argument that he did make before the BIA: that the IJ did not give sufficient weight to his testimony and gave undue weight to the deficiencies in the documentary record.[1] We have no trouble concluding that the IJ's

---

[1] The government contends that Kinisu has waived this claim by failing to develop his argument and failing to provide relevant citations to the record. Because Kinisu's claim is easily resolved

-10-

decision was supported by substantial evidence on the record as a whole. First, Kinisu himself admits in his brief before this court that "[t]he [IJ]'s focus on the lack of documentation is warranted by the record in this case." Indeed, Kinisu produced very few documents in support of his claims about the marriage, and the IJ determined that the ones he did produce showed either dubious support for those claims or no support at all. See, e.g., McKenzie-Francisco, 662 F.3d at 587 (finding substantial evidence to support determination of lack of good faith where the record was "lacking the type of memorabilia that marriages typically produce," including absence of "evidence that [the spouses'] finances were commingled" other than two joint tax returns). Evidence supporting the good faith of the marriage -- often in the form of documentary evidence -- is a required factor in an application for removal of conditions. See 8 C.F.R. § 216.4(a)(5).

Second, the IJ did consider Kinisu's testimony in her decision, just not in a way that was ultimately favorable to him. The IJ reasonably questioned Kinisu's failure to produce any affidavits discussing the marital relationship in light of Kinisu's admission that his brother had known the couple and would have been able to provide an affidavit if Kinisu had asked for one. Kinisu also testified that he had not asked his ex-wife for an affidavit even though they were on cordial terms. He further testified that

on its merits, we do not address the waiver question.

he had not asked any friends for affidavits because he thought people in this country stay out of other people's business. The IJ did not find these explanations convincing, nor did she find Kinisu's explanation for the failure of his marriage convincing, given the discrepancy between the dates when he claimed that Johnson was caring for her ailing mother and the date of the alleged breakdown of the marriage.

"Even if the explanation for an inconsistency is on its face reasonable and consistent, that does not mean the explanation is true or that the IJ must accept it. It also does not mean that an IJ cannot evaluate a superficially reasonable explanation by weighing its plausibility or assessing an applicant's credibility." Weng v. Holder, 593 F.3d 66, 72 (1st Cir. 2010). Here, after considering Kinisu's testimony and the documents (and lack of documents) allegedly supporting it, the IJ determined that Kinisu's explanations for the shortcomings in his documentation were unreasonable. It is clear that the IJ weighed the totality of the evidence in determining that Kinisu did not meet his burden of proving that he had entered into his marriage in good faith. The many gaps in the documentary record, along with Kinisu's weak explanations for them, provide substantial evidence supporting this decision. See Pan v. Gonzales, 489 F.3d 80, 87 (1st Cir. 2007) ("So long as the IJ has given reasoned consideration to the

evidence as a whole, made supportable findings, and adequately explained her reasoning, no more is exigible.").

The petition for review is <u>denied</u>.