# United States Court of Appeals
## For the First Circuit

No. 12-2134

JING LIN,

Petitioner,

v.

ERIC H. HOLDER, JR., United States Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Torruella and Thompson, Circuit Judges.

Randy Olen on brief for petitioner.
Charles S. Greene, III, Trial Attorney, Office of Immigration
Litigation, U.S. Department of Justice, Stuart F. Delery, Assistant
Attorney General, Civil Division, and Douglas E. Ginsburg,
Assistant Director, on brief for respondent.

July 14, 2014

**LYNCH, Chief Judge.**  Jing Lin, a citizen of China, received conditional permanent resident status in the United States in February 2002, through her marriage to an American citizen. Because that marriage ended in divorce, Lin was unable to file a successful joint petition with her spouse to remove the conditions. Instead, she applied for waiver of the joint petition requirement, arguing that she had entered into the marriage in good faith.  The Immigration Judge ("IJ") found that Lin failed to meet her burden to demonstrate that the marriage was entered into in good faith, denied Lin's application, and granted her removal from the United States through voluntary departure.  The Board of Immigration Appeals ("BIA") adopted and affirmed the IJ's decision.  Because the order is supported by substantial evidence, we deny Lin's petition for review.

### I.

In May of 2000, petitioner Jing Lin, a Chinese citizen then still in China, married Thai Baotai Huynh, an American citizen.  They had been introduced remotely by Lin's great aunt around February of that year, when Lin's great aunt looked for an American for Lin because "she wanted to come to the U.S."  Lin's great aunt told Lin that Huynh was a "good person" with "a good job and a good income."  After exchanging cards and phone calls for three months, Huynh and Lin married while Huynh visited China for five weeks.

-2-

The couple then lived apart for almost two years, Lin in China and Huynh in the United States. On February 22, 2002, Lin finally entered the United States and was granted conditional permanent resident status on the basis of her marriage to Huynh.

The couple lived in California for about four months, during which Huynh was "usually not home." Lin did not know where Huynh went during this period. Her great aunt testified that Huynh was a driver whose job required him to leave for long periods of time. Lin did not know or learn background information about Huynh's family and life in California.

At the end of those roughly four months, Lin moved to her great aunt's home in New York, then to Rhode Island where her cousin referred her to a job. Lin and Huynh continued to call each other, and each spouse visited the other about three times. The couple also filed joint tax returns in 2002 and 2003. Those returns indicate that Lin worked in Rhode Island and that Huynh was a full-year resident of Indiana.

In 2003, Lin began an extramarital affair. When Huynh visited Lin in February 2004, he discovered that Lin was pregnant by another man. Huynh left, and Lin sought a divorce in Rhode Island state court. After failing to appear in the Rhode Island proceedings, Huynh had a default judgment entered against him. The divorce became final on April 1, 2009.

By this time, Lin had already sought to remove the

conditions on her permanent residency. Lin and Huynh had filed a joint petition in December 2003. Under 8 U.S.C. § 1186a(c)(1), (d)(2), a married couple can remove the conditions on the noncitizen spouse's residency by filing a joint petition during the 90 days preceding the two-year anniversary of the grant of conditional permanent residence. The joint petition was denied after Lin and Huynh's divorce.

A noncitizen spouse can seek a waiver of the joint petition requirement by showing, "inter alia, 'the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through the death of the spouse) and the alien was not at fault in failing to meet the [joint filing] requirements.'" Kinisu v. Holder, 721 F.3d 29, 31 (1st Cir. 2013) (alteration in original) (quoting 8 U.S.C. § 1186a(c)(4)(B)).

Lin filed for such a waiver, which was denied on February 17, 2010. She then received a Notice to Appear charging her with removability under 8 U.S.C. § 1227(a)(1)(D)(i), since the status allowing her lawful residence -- her marriage to an American citizen -- had been terminated. Lin conceded removability but sought review of the waiver denial. After a hearing, the IJ denied Lin's request for relief and granted voluntary departure. The IJ found that Lin failed to meet her burden to show she entered into her marriage in good faith. In particular, the IJ pointed to Lin's

great aunt's testimony that Lin wanted to marry in order to come to the United States, the lack of documentary evidence showing commitment to the marriage, and Lin and Huynh's distant relationship during the marriage, evidenced by several factors.

On August 21, 2012, the BIA adopted and affirmed the IJ's decision, specifically referencing and describing parts of that decision.  This petition followed.

## II.

Where "the BIA adopts the IJ's opinion and discusses some of the bases for the IJ's decision, we have authority to review both the IJ's and the BIA's opinions."  Vallejo Piedrahita v. Mukasey, 524 F.3d 142, 144 (1st Cir. 2008) (quoting Ouk v. Gonzales, 464 F.3d 108, 110 (1st Cir. 2006)) (internal quotation marks omitted).  We review the BIA's factual findings using the "quite deferential" substantial evidence standard.  Kinisu, 721 F.3d at 34 (quoting Mediouni v. INS, 314 F.3d 24, 27 (1st Cir. 2002)) (internal quotation marks omitted).  Under this standard, we do not disturb the BIA's findings unless "the record evidence would 'compel a reasonable factfinder to reach a contrary determination.'"  Id. (quoting Chhay v. Mukasey, 540 F.3d 1, 5 (1st Cir. 2008)).

The determination that a waiver applicant failed to show that she entered into a marriage in good faith is a factual finding on which the applicant bears the burden of proof.  McKenzie-

Francisco v. Holder, 662 F.3d 584, 586-87 (1st Cir. 2011).  To make the required showing, the applicant must demonstrate that, "at the time that the newlyweds plighted their troth, [s]he intended to establish a life with h[er] spouse."  Id. at 587.  While good faith is evaluated at the time of the marriage, as Lin emphasizes, activity before and after the moment of marriage is relevant to the inquiry.  See, e.g., 8 C.F.R. § 1216.5(e)(2) (directing consideration of evidence demonstrative of "the amount of commitment by both parties to the marital relationship"); Reynoso v. Holder, 711 F.3d 199, 207 (1st Cir. 2013) (referencing length of cohabitation and documentary evidence as relevant evidence in a good faith inquiry).

The record does not compel the conclusion that Lin entered into her marriage in good faith.  After all, Lin's marriage to an American citizen had been arranged while Lin was still in China because Lin wanted to move to the United States.  The couple lived apart for nearly all of their marriage.  During the four months in which they lived together, Huynh was usually away, and for reasons unknown to Lin.  Lin also failed to offer any documentary evidence, such as a joint bank account or general commingling of assets, which typically accompanies a valid marriage.  See Kinisu, 721 F.3d at 35 (stressing the importance of documentary evidence).  Nor did Lin know basic details about her husband, his family, and his life before they met.  Further, Lin

-6-

began an affair in 2003 with another man. Considering all of these facts, a reasonable factfinder could easily conclude that Lin did not enter her marriage in good faith.

Lin principally argues that these facts are similar to those of Cho v. Gonzales, 404 F.3d 96 (1st Cir. 2005), in which this court reversed the BIA's finding that the petitioner had failed to demonstrate a good faith marriage.[1] Lin suggests that in Cho, as in her case, the couple engaged in a two-year long-distance relationship involving phone calls and visits, followed by a period of cohabitation lasting less than a year and involving an extramarital affair.

Cho is readily distinguishable. First, during the nearly two-year premarital courtship in Cho, the couple visited each other repeatedly to meet each other's families and to decide whether their marital residence would be the United States or Taiwan. Id. at 103. Here, Lin was introduced to Huynh so that she might move to the United States, she met him once on the same five-week visit to China during which they married, and she never met and knew little about Huynh's family.

Second, the couple in Cho "jointly enrolled in a health

---

[1] Lin makes a number of other arguments not presented to the BIA, including that the IJ's discussion of Lin's credibility requires reversal. This court lacks jurisdiction over arguments not pressed before the BIA, and we disregard them. Shah v. Holder, ___ F.3d ___, 2014 WL 2959018, at *4 (1st Cir. July 2, 2014); Kinisu, 721 F.3d at 59.

-7-

insurance policy, filed tax returns, opened bank accounts, entered into automobile financing agreements, and secured a credit card." Id. Lin and Huynh only filed two joint tax returns, and both of those returns showed that the couple lived in separate states -- she in Rhode Island and he in Indiana.

Third, the couple in Cho lived together for ten months before the petitioner's husband asked for a separation. Id. Here, the couple lived together for about four months, during which Lin's husband was usually away, and Lin initiated the divorce proceedings. Finally, the extramarital affair in Cho involved the petitioner's husband and was unknown to the petitioner at the time of marriage. Id. at 104. By contrast, the petitioner here engaged in the affair.

Lin's remaining argument over which we have jurisdiction is that the BIA and IJ erred by relying on her extramarital affair. The parties agree that the affair began three years after her marriage and eighteen months after she moved to the United States. Lin argues, however, that the affair is too remote in time to be relevant to her intent at the time of the marriage. This difference of views is of no moment. The other evidence was substantial and more than sufficient.

The decisions by the BIA and IJ are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Kinisu, 721 F.3d at 34 (quoting Mediouni,

-8-

314 F.3d at 27) (internal quotation mark omitted).  As a result, we _deny_ the petition for review.


_So ordered._