# United States Court of Appeals
## For the First Circuit

---

No. 15-1266

ARSENIO VALDEZ,

Petitioner,

v.

LORETTA E. LYNCH,[*] Attorney General,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

---

Before

Torruella, Selya, and Thompson,
<u>Circuit Judges</u>.

---

<u>John H. Ruginski, Jr.</u> on brief for petitioner.
<u>Channah F. Norman</u>, Trial Attorney, Office of Immigration Litigation, <u>Benjamin C. Mizer</u>, Principal Deputy Assistant Attorney General, Civil Division, and <u>Mary Jane Candaux</u>, Assistant Director, Office of Immigration Litigation, on brief for respondent.

---

February 10, 2016

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Loretta E. Lynch has been substituted for former Attorney General Eric H. Holder, Jr. as the respondent.

**THOMPSON**, **Circuit Judge**.  Petitioner Arsenio Valdez seeks review of an order of the Board of Immigration Appeals ("BIA") denying his request for a so-called "marriage waiver" from removal.  For the reasons explained below, the petition will be denied.

**BACKGROUND**

Valdez, a citizen and native of the Dominican Republic, obtained conditional permanent resident status in 1996 after marrying an American citizen the year before.  Their marriage fell on hard times, and the couple separated in the early 2000s, with their divorce becoming final in 2008.

Served with a Notice to Appear in October of 2011, Valdez conceded removability at a hearing before an immigration judge ("IJ").  At the same time, Valdez sought relief from removal in the form of an adjustment of status from conditional permanent resident to permanent resident.  He also asked for a waiver of the usual requirement to present his status-change request jointly with his spouse.  He said that he was forced to make this request on his own, and thus needed a waiver from the joint petition requirement, because he had "entered into the marriage in good faith but the marriage was terminated through divorce or annulment."

After considering Valdez's evidence, the IJ concluded that Valdez failed to establish he had entered into his marriage

- 2 -

in good faith. Accordingly, she ordered him removed to the Dominican Republic. Valdez appealed to the BIA, which in a written decision discussed what it saw as a lack of evidence that Valdez married in good faith, and upheld the IJ's decision in its entirety after concluding that Valdez "failed his burden of proof to establish that the marriage was bona fide."

Aggrieved, Valdez filed a timely petition for review with this court.

### STANDARD OF REVIEW

In denying Valdez's appeal, the BIA discussed the evidence adduced before the IJ and the legal arguments Valdez made as to why the IJ got it wrong. In affirming the IJ, the BIA indicated that it had relied on its own reasoning, plus the reasons "articulated by the [IJ] in her decision . . . ." Because the BIA did not simply adopt the IJ's decision, but relied instead on a combination of its own reasoning and the IJ's, we review the IJ's and the BIA's decisions together. Dimova v. Holder, 783 F.3d 30, 35 (1st Cir. 2015).

The parties agree that Valdez bore the burden of showing that he entered into his marriage in "good faith." Lamim v. Holder, 760 F.3d 135, 137 (1st Cir. 2014). Whether or not this burden has been met is a call for the IJ or BIA to make in the first instance, as the "judgment about whether a marriage was entered into in good faith is a factual one." Id. at 138 (citing

Jing Lin v. Holder, 759 F.3d 110, 112 (1st Cir. 2014)).  We must uphold the factfinder's judgment as to the presence or absence of good faith "so long as it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"  Id. (quoting Reynoso v. Holder, 711 F.3d 199, 205 (1st Cir. 2013)).  What this all means is that we will only reverse the IJ's or the BIA's finding on whether a marriage was entered into in good faith if "the record evidence would 'compel a reasonable factfinder to reach a contrary determination.'"  Jing Lin, 759 F.3d at 112 (quoting Kinisu v. Holder, 721 F.3d 29, 34 (1st Cir. 2013)).

## DISCUSSION

### A.

First, the lay of the land.  A noncitizen who marries a United States citizen may obtain conditional permanent resident status.  See 8 U.S.C. § 1186a(a)(1).  To remove that condition, the two spouses must file a joint petition with the Department of Homeland Security asking for it to be removed, and they must do so within the ninety-day window before the second anniversary of the noncitizen spouse's attainment of conditional permanent resident status.  See id. § 1186a(c)(1)(A); 8 C.F.R. § 1216.5(a).  Failure to file the petition in the time allotted results in termination of the noncitizen spouse's conditional permanent resident status.  8 U.S.C. § 1186a(c)(2).

- 4 -

A couple that does not file their petition on time can jointly apply for a "hardship waiver" of the timing requirement. See id. § 1186a(c)(4). If the noncitizen spouse is unable to file a joint application because the marriage has already ended, he must show -- among other things -- that he married his ex-spouse "in good faith." Id. § 1186a(c)(4)(B). "Good faith" in this context means that the noncitizen "intended to establish a life with [his] spouse at the time" of marriage. Cho v. Gonzales, 404 F.3d 96, 102 (1st Cir. 2005). The noncitizen's burden of proving good faith may be satisfied "by introducing 'evidence relating to the amount of commitment by both parties to the marital relationship.'" Lamim, 760 F.3d at 137 (quoting 8 C.F.R. § 1216.5(e)(2)).

> Evidence of good faith includes the following:
>
> (i) Documentation relating to the degree to which the financial assets and liabilities of the parties were combined;
>
> (ii) Documentation concerning the length of time during which the parties cohabited after the marriage and after the alien obtained permanent residence;
>
> (iii) Birth certificates of children born to the marriage; and
>
> (iv) Other evidence deemed pertinent . . . .

8 C.F.R. § 1216.5(e)(2).

Pursuant to this regulation "immigration authorities [are] to evaluate 'good faith' on the basis of documentation

concerning the couple's cohabitation, the degree to which the couple's finances were commingled, any children born to the marriage, or other pertinent evidence." Lamim, 760 F.3d at 138. Clearly, the regulation prioritizes written evidence over testimonial assertions, as three out of the four categories consist of "documentation" or "certificates." See 8 C.F.R. § 1216.5(e)(2)(i)-(iv); see also Lamim, 760 F.3d at 138 (focusing our analysis on documentary evidence). Indeed, it would seem that oral testimony only falls under the fourth category if "deemed pertinent" by the immigration authorities. 8 C.F.R. § 1216.5(e)(2)(iv).

## B.

Valdez's flagship argument is that the IJ and BIA should be reversed because they ignored probative and uncontroverted evidence in the record demonstrating that he married in good faith.[1] The government, by contrast, says that Valdez's evidence was not strong enough to compel us to reverse the IJ and BIA.

Here, the IJ and the BIA held only that Valdez failed to carry his burden of proving that he married in good faith. Our review of the record confirms that the IJ's and the BIA's decisions

---

[1] He also throws in a couple references to "due process," but fails to develop an argument along those lines. Therefore, any due process argument that could have been made is waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

are supported by reasonable, substantial, and probative evidence. Nothing comes close to compelling us to reach the opposite result.

Valdez testified in front of the IJ that he (then age 37) and Evelyn Mercedes Veracruz (age 50) got married in Puerto Rico in 1995, and that their marriage ended in divorce in 2008. They married because Valdez "fell in love with her" after they met. He did not testify about when or under what circumstances they met, what their life was like before or after their wedding, or provide any details about the wedding ceremony.

After the wedding, Valdez and his wife, who had lived together before marriage, continued cohabitating in Puerto Rico for at least part of 1995 (the exact timeframe is by no means clear). In 1996, Valdez moved to Rhode Island (for reasons not disclosed in this record), where he began working, while his wife stayed behind on the island. It was not until 1998 that Valdez went to Puerto Rico and brought his wife back to Pawtucket, where they lived together for "about three months." Valdez explained that his wife never wanted to be in Rhode Island due to the cold weather and her arthritis, so she returned to Puerto Rico. Valdez would "send her a lot of money" there, but his cousins in Puerto Rico told him that she would "drink that money."[2]

---

[2] No one asked Valdez to explain what he meant by this remark.

Valdez testified his marriage was "valid" and that it did not produce any children because his wife "couldn't give birth." He said that the two did not have joint ownership of any real estate, but that both his and his wife's names were on one of his apartment leases. In addition, Valdez said they owned a car together (although his wife's name was not on the title because she didn't have a driver's license), and that they had a joint bank account at Fleet National Bank.

Sometime around the year 2000, Valdez "started noticing" that his wife was having an affair. Valdez pointed to the affair -- along with his wife's unwillingness to stay in Rhode Island -- as causing their separation. They parted company around December 2001, and Valdez "lost contact" with her in 2002 or 2003.

Valdez also submitted various documents in support of his claim. Included among them were numerous federal and state tax returns as evidence of the couple's commingling of financial assets and liabilities. See 8 C.F.R. § 1216.5(e)(2)(i). Valdez did not produce any leases or other documents to back up his assertion that he and his wife lived together following their marriage. See id. § 1216.5(e)(2)(ii). Furthermore, and unsurprisingly in light of his testimony that his wife was unable to bear children, Valdez did not submit birth certificates from any children born to the marriage. See id. § 1216.5(e)(2)(iii).

Valdez's other documents must be considered as "other" pertinent evidence because they did not bear on commingling of assets or the amount of time the couple lived together.  See id. § 1216.5(e)(2)(iv).  In that vein, Valdez introduced a signed statement "affirm[ing] and attest[ing] and testif[ying] before God and men" that his marriage "was a true marriage," along with two affidavits from friends who did not mention his marriage, but attested to his good moral character.  Finally, he submitted a copy of the State Department's country report for the Dominican Republic and a background check from the Hartford (Connecticut) Police Department showing he had no criminal record in that city.[3]

Considering the evidence "as a whole," Lamim, 760 F.3d at 138, we find that Valdez's presentation was not so compelling as to permit us to find fault with the IJ's and BIA's determinations that he had failed to carry his burden of proof.

First, Valdez's testimony is clearly insufficient to carry his burden of showing that he married in good faith.  True, he did testify that his marriage was "valid."  But when two individuals "enter into a good-faith marriage, their wedding day is a significant (and, therefore, memorable) event," McKenzie-Francisco v. Holder, 662 F.3d 584, 587 (1st Cir. 2011), and Valdez

---

[3] This document indicated Valdez lived there at one point.

- 9 -

gave no details about the ceremony. So his bald assertion that his marriage was "valid" does him no good.

And his barebones testimony about his and his wife's living and financial arrangements cannot carry the day either. We have never held that testimony as general and bereft of detail as Valdez's is sufficient to make out a "good faith" showing. To the contrary, our caselaw indicates such testimony is simply not enough. Cf. Reynoso, 711 F.3d at 207 (finding that the petitioner's testimony was not sufficient to "overcome[] the weaknesses in the documentary evidence" where the details of "her oral and written statements contain[ed] numerous inconsistencies").

The documents Valdez submitted do not get him over the hump. The tax returns do little to help, as the only one between 1996 and 2001 purporting to bear his wife's signature is the 2000 Rhode Island return. The remainder were either blank or signed by Valdez only, even though they were filed as joint returns. Not one lists an occupation for, or any income attributable to, Valdez's wife. Plainly, the tax returns provide no evidence of any commingling of financial assets or liabilities. Valdez did not come forward with any other documents evidencing commingling. The record is similarly devoid of documentary evidence showing the couple lived together after they were married, and there are no birth certificates to consider.

The remaining documents are of no assistance either, as Valdez's own written statement added nothing to his testimony before the IJ, and the affidavits from his friends did not so much as mention his marriage. And it takes but a moment's thought to conclude that the State Department's country report and the background check from the Hartford Police have nothing to say about whether Valdez married in good faith.

In accordance with our prior decisions, we conclude that the scant testimonial and documentary evidence in the record is far from sufficient to allow us to overturn the IJ's and BIA's well-founded conclusion that Valdez failed to meet his burden of showing that he married in good faith.[4]  See Lamim, 760 F.3d at

---

[4] This case is a far cry from Cho v. Gonzales, 404 F.3d 96 (1st Cir. 2005), where we concluded that the BIA erred in finding that the petitioner failed to meet the burden of showing good faith. Cho is instructive in its differences. The uncontradicted evidence in that case was corroborated by documents and showed that the couple engaged in a lengthy courtship with frequent phone calls prior to marriage, that they ultimately moved in together, and that they "jointly enrolled in a health insurance policy, filed tax returns, opened bank accounts, entered into automobile financing agreements, and secured a credit card." Id. at 103. The petitioner also "introduced extensive counseling records from the period following her separation [from her husband] which detailed her therapists' perceptions that she harbored a strong desire to make her marriage work and her serious depression over its troubles and eventual failure." Id.

Valdez has come forward with nothing remotely similar to the evidence in Cho. Given the dearth of evidence in this record bearing on good faith, we need not speculate as to the quantum of proof required for a petitioner to meet the burden of showing good faith. Wherever that line may be, Valdez does not approach it.

138-39 (where the record was devoid of "documentation 'evidencing commingling' of the couple's finances, contained only 'limited' evidence of cohabitation, . . . '[and] lacked the type of memorabilia that marriages typically produce[,]' . . . the [BIA] could not say that [the petitioner] entered into his marriage with [his ex-spouse] in 'good faith.'" (first alteration in original)); Jing Lin, 759 F.3d at 112 (taking into account factors including the petitioner's failure "to offer any documentary evidence, such as a joint bank account or general commingling of assets, which typically accompanies a valid marriage," that the "couple lived apart for nearly all of their marriage," and the petitioner's lack of knowledge of "basic details about her husband, his family, and his life before they met").

## c.

Attempting to make up for his inadequate evidentiary presentation and avoid denial of his petition for review, Valdez advances a couple of last-ditch arguments.

First, he says the IJ and the BIA erroneously required him to meet the "well-nigh impossible" burden of demonstrating "his spouse's actual intents or motives" in marrying him. We see nothing in the IJ's or BIA's decisions indicating that Valdez was held to such a standard. And Valdez himself doesn't even point to

any language in either decision to support this argument.[5]  So we reject it out of hand.

Finally, Valdez intimates that he should not be faulted for being unable to produce corroborative documentary evidence because its absence "was the consequence of a protracted delay, of a decade" in the government's asking him for it.  This is a nonstarter.

The requirement to present documentary evidence to corroborate an applicant's testimony has existed for decades.  See, e.g., Nyonzele v. INS, 83 F.3d 975, 980 (8th Cir. 1996) (discussing 8 C.F.R. § 216.5(e)(2), the then-effective regulation, and its call for production of "documentation concerning [a couple's] combined financial assets and liabilities, the length of time during which they cohabited after the marriage and after the alien obtained conditional permanent resident status, and any other relevant evidence"); Matter of Laureano, 19 I & N Dec. 1, *3 (B.I.A. 1983) (recognizing that evidence of good faith "could take many forms, including, but not limited to, proof that the beneficiary [i.e., the noncitizen spouse] has been listed as the petitioner's spouse on insurance policies, property leases, income tax forms, or bank accounts" (citing Matter of Phillis, 15 I & N

---

[5] His appellate brief's quotation of the IJ's conclusion that Valdez "has not met his burden of proving that he entered into a qualifying marriage in good faith," actually cuts in favor of finding that the IJ applied the correct legal standard.

Dec. 385 (B.I.A. 1975)).  Valdez, who as best we can tell from the record was represented by counsel throughout these proceedings, can hardly claim to have been unaware that the IJ and BIA might expect him to back up his testimony with documentary proof.

But even more importantly, Valdez never asked the IJ for a continuance to obtain documents, and he did not tell the IJ that he couldn't get ahold of anything as a result of the passage of time.  He also failed to raise any argument about the unavailability of documents in his appeal to the BIA.  Because "[t]his court lacks jurisdiction over arguments not pressed before the BIA," Jing Lin, 759 F.3d at 112 n.1, we may not and do not consider this point.

## CONCLUSION

Let us be perfectly clear: we do not hold that a petitioner can never establish that he married in good faith based in whole or in part on his own testimony.  What we do hold is that the decisions of both the IJ and the BIA concluding that Valdez failed to carry his burden of proof in this instance are supported by substantial evidence. For the foregoing reasons, Valdez's petition for review is **denied**.